**Frank Schliske**

Name

**c/o 31310 Berlin Road**

**Lebanon OR 97355**

Address

FILED'08 MAR 26 11 23USDC-ORE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

**FRANK SCHLISKE**, Plaintiff

(Full Name)

CASE NO. 08-6098-AA

(To be supplied by the Clerk)

v.

**Albany Police Department,**
**Jason Carlile**, Defendant(s)

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C.§1983

### A.    JURISDICTION

1) _____**Frank Schliske**_____, is a citizen of _____**Oregon**_____

(Plaintiff)                                                    ( State )

who presently resides at _____**31310 Berlin Road Lebanon**_____

(Mailing address or place of confinement)

**OR 97355** .

2) Defendant _____**Albany Police Department**_____ is a citizen of

(Name of first defendant)

**Albany Oregon** , and is employed as

(City  State)

**City of Albany Police Dept.** . At the time the claim(s)

( Position and title, if any)

alleged in this complaint arose, was this defendant acting under color of state law?

Yes ☒    No ☐    If your answer  is "Yes", briefly explain:

**City Agency enforcing State law.**

XE-2    2/78    CIVIL RIGHTS COMPLAINT (42 U.S.C. §1983)

*Complaint Shthlisk v Albany Police Dept, State of Oregon*

3) Defendant **Jason Carlile** _____ is a citizen of

(Name of second defendant)

**Oregon** _____ , and is employed as

(City, State)

**Linn County District Attorney** _____ . At the time the claim(s)

( Position and title, if any)

alleged in this complaint arose, was this defendant acting under color of state.

Yes ☒    No ☐    If your answer is "Yes", briefly explain:

**Linn County DA interviewed by local paper about dismissed**

**criminal case.**

(Use the back of this page to furnish the above information for additional defendants.)

4) Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3), 42U.S.C. §1983. (If you wish to assert Jurisdiction under different or additional statutes, you may list them below.)    28 USC. S 133ř, 28 USC S. 1367

## B. NATURE OF THE CASE

1) Briefly state the background of your case.

**On Friday, November 30 2007 Albany Police**

**Department initiated an investigation based solely on a**

**hearsay alleged conversation claimed by Scott Leonard**

**to have occurred one night earlier with his highly intox-**

**-icated "drinking buddy" neighbor Frank Schliske. Leo-**

**nard told police that Schliske had claimed to him to have**

**earlier that night (November 29 2007) "killed a pedophile**

**by breaking his neck" then "a bunch of guys pulled him of**

**the victim" then drove him home in a pick-up truck with**

**knowledge that "his friends would take care of the body".**

XE-    2/7                              -2-

Complaint - Schliske v Albany Police Dept, State of Oregon

During the next four days, Albany Police Dept. conducted an investigation that included the participation of at least 18 police officers and officials (including five detectives); four searches (including two pursuant to warrants) and interviews with at least ten possible witnesses. This is described in the police "Affidavit of Probable Cause" (Exhibit 1). On this basis, Albany Police Dept. arrested and booked Mr. Schliske on December 03 2007, charging him with "First Degree Manslaughter" and put him in Linn County Jail. He was given a polygraph test and told by police that he had "failed it".

The next day, December 04 2007, The Linn County DAs Office filed an "Information" charging Mr. Schliske with the "First Degree Manslaughter" of David Russell Sitton. This was despite the fact that the extensive police investigation turned up no dead body of Sitton, no "missing person" report on Sitton, no forensic evidence to believe that Sitton (or anyone) was dead. In fact, the investigation had provided no corroborating evidence that any crime had even occurred. The investigation did indicate that Schliske had an alcohol problem and would speak in an obnoxious, irrational manner while intoxicated. Schliske's criminal history (Exhibit 3) did show a history of multiple "Driving Under the Influence" convictions and drivers license revocations, but nothing consistent with manslaughter. Further, witnesses at the scene of

-3-

Complaint - Schliske v Albany Police Dept, State of Oregon

-4-

the alleged crime did not confirm any fight, any men pulling
Schliske off anyone, anyone disposing of any dead body; nor
does OJIN confirm that Sitton was a pedophile.Finally, Sch-
liske himself does not confirm Leonard's account.

On December 04 2007, a man claiming to be David
Sitton called Albany Police Department and told them that he
was alive and well.The next day, December 05 2007, he ap-
peared in person at APD very much alive. In response, Linn
County DA merely filed an "Amended Information" to now
charge Mr. Schliske with the "First Degree Manslaughter of
another unnamed human being", and held Mr. Schliske in jail
on this premise. On December 10 2007, the DA moved to dis-
miss that charge against Mr. Schliske "upon the interests of
justice" and Mr. Schliske was released.By this time, he had lost
his job,lost his apartment, and had been featured in the local
newspaper as a " Killer".

Mr. Jason Carlile, Linn County DA, was or should have
been aware of the above facts and Oregon law when he spoke to
the Albany Democrat Herald about the Schliske case on December
10 2007. He was or should have been aware that there was no "rea-
sonably objective" probable cause to arrest,charge and detain Mr.
Schliske.He was or should have been aware that under Oregon law
even a substantiated confession without corroborating evidence is
insufficient as a basis for a criminal charge. He knew or must have
known that the extensive four day police investigation turned up no

evidence to corroborate that a crime had been committed at all. By dismissing the charges and releasing Mr. Schliske, Mr. Carlile was de facto admitting all this.

Yet his comments to the Albany Democrat Herald, under co-lor of State law, create an entirely different picture. He implies that it is still reasonable to presume that Mr. Schliske is a homicidal killer; for this reason an investigation is continuing, just that there is not enough evidence "at this time" to convict.

This gives the impression that it is just a matter of time before enough evidence is found to prove Mr. Schliske's guilt. Further, Mr. Car-lile's discussion of manslaughter charges when the victim is not ide-fied fails to mention that in this case there is no evidence at all that suggests that there is a victim, or that a crime has been committed.

Mr. Carlile made these comments to the Albany Democrat Herald knowing:

1)That they would be published and read by thousands of local citizens.

2) That they cast Mr. Schliske in a "false light" in a manner ex--tremely offensive to reasonable people.

3) That they imply that Mr. Schliske has committed a crime of moral turpitude.

4) That they prejudice Mr. Schliske in his work or profession.

5) That the impression they give is false or probably false, but made with "reckless disregard" of the false impression and the false light in which Mr. Schliske is cast.

Complaint - Schliske v Albany Police Dept, State of Oregon

Plaintiff alleges that Mr. Carlile made these statements not to inform the public of the truth, but to deliberately defame Mr. Schliske and cast Mr. Schliske in a false light for the purpose of "saving the face" of Albany Police Department and Linn County DAs Office to justify their error, rather than admit error and try to mitigate the consequences of that error.

Plaintiff further contends that Mr. Carlile was acting outside his prosecutorial function and for a purpose not related to his prose--cutorial function. His position as Linn County DA, however, has the effect of resulting in readers of the Democrat Herald believe the libel and false light targeting Mr. Schliske.

## C.  CAUSE OF ACTION

1)  I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations:  (If necessary, you may attach up to two additional pages (8 1/2" x 11") to explain any allegation or to list additional supporting facts.

A)(1)  Count I:

Albany Police Department ,in view of their investiga--tion of the prior 4 days; in view of the nature and source of the allegations and the "totality of circumstances", DID NOT HAVE PROBABLE CAUSE for their warrantless arrest and incarcera--tion of Plaintiff December 03 2007.

B)(1)  Count II:

Mr. Jason Carlile,under color of State law, libeled Plaintiff in comments published in the December 11 Albany Democrat Herald

Schliske v Albany Police Dept State of Oregon

falsely implying that it is reasonable as of that date to believe that Mr.

Schliske had killed a man.

c}(1) Count III:

         Mr. Justin Carlile, under color of State law, cast a "false light"

by his comments to the Albany Democrat Herald creating the false im-

-pression that Mr. Schliske is a dangerous killer.

D) PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? Yes ☐    No ☒    If your answer is "YES", describe each lawsuit. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

2) I have previously sought informal or formal releif from the appropriate administrative officials regarding the acts complained of in Part C. Yes ☒    No ☐    If your answer is "Yes", briefly describe how relief was sought and the results. If your answer is "No," briefly explain why administrative relief was not sought.

         Plaintiff filed "Notice of Tort Claim" with Albany Police

Department and **Jason Carlile,** stating the same facts and inclu-

-ding the same exhibits as are herein provided. I have not received

any response.

E.    REQUEST FOR RELIEF

        Plaintiff's false arrest resulted in embarrassment, humiliation,

8 days false imprisonment, loss of my home, loss of my job, loss of cer-

-tain possessions seized by police and never returned. The subsequent

libel and false light has resulted in public embarrassment, humiliation,

impaired ability to find a job or rent/buy a home. I pray the Court for a

judgment in my favor against Albany Police Department for $100,000

economic and general damages, and a judgment in my favor against

Jason Carlile in $100,000 economic and general damages, with leave to

–7–

Complaint - Schliske v Albany Police Dept, State of Oregon

**amend the False Light claim to ask for consideration of punitive dam-**

**-ages.**

I declare under penalty of perjury that the foregoing is true and correct.

DATED: 03/25/08

Signature of Plaintiff(s)
(all Plaintiffs must sign)

Complaint: Schlinter v. Albany Police Dept., et al of 9

STATE OF OREGON                )
                               ) SS.          **PROBABLE CAUSE AFFIDAVIT**
COUNTY OF LINN                 )

I, the undersigned police officer, after first being duly sworn upon oath, do hereby affirm that the following information is true to the best of my knowledge and belief:

Arrestee:    SCHLISKE, FRANK WADE              DOB: 03-28-69

Master ID#:   101908

Alleged Crime(s):    ORS 163.118 Manslaughter in the First Degree

Date of Crime:    November 29-30, 2007

Location of Crime in Linn County:   230 SE 6th Avenue, Albany, Oregon

Victim of Crime:    Unknown Subject

Arresting Agency:   Albany Police Department

Albany Police Case Number:    07-26493

Arresting Officer:   Steven B. Corder

Arrest Date & Time:   December 3, 2007          0345 Hours

Booking Date & Time:    December 3, 2007        0630 Hours

Submitted by:    Steven B. Corder _____   Date:   December 3, 2007

Summary of Probable Cause:

On Friday, November 30, 2007, at 1630 hours, I was on-duty, wearing civilian clothes, displaying my badge, and working as a Detective with the Albany Police Department. I was in the Report Writing area of the station when DETECTIVE DAMON STRUBLE contacted me, via department cell phone. He advised that he was possibly working a homicide investigation and he asked for my assistance. I waited in the Report Writing area and DETECTIVE DAMON STRUBLE met with me there. He was on his department issued cellular telephone speaking with someone when he walked up to me.

DETECTIVE DAMON STRUBLE was writing on a piece of paper and he whispered to me that FRANK SCHLISKE was potentially the suspect in a homicide. I began running records checks on him and I learned that our agency had several previous contacts with him. I learned that FRANK SCHLISKE had an Oregon Driver License that was "REVOKED" and that his listed address on his license was "3320 NW Highway 20 #5 ALBANY OR 97321." DETECTIVE DAMON STRUBLE concluded his phone call and he advised me that KATHY LEONARD told him that her brother, SCOTT LEONARD, was potentially a witness of a homicide. He told me that he asked KATHY LEONARD to have SCOTT LEONARD call him and/or come to the Albany Police Department so that we could speak with him.

I contacted CAPTAIN ERIC CARTER and briefed him on this investigation. We moved from the Report Writing area to the Detective Unit so that we could conduct follow-up on this investigation. I began further researching FRANK SCHLISKE and obtaining information about him. I determined that FRANK SCHLISKE is a convicted felon in the State of Oregon. He has a history of eluding the police, possessing firearms, and assault. DETECTIVE DAMON STRUBLE received a telephone call from SCOTT LEONARD. He requested that SCOTT LEONARD meet us at the station, which he agreed to do. When SCOTT LEONARD arrived, DETECTIVE DAMON STRUBLE went to the front counter to meet him. I went to the Community Resource Unit of our department. I activated the digital video recording system for Interview Room #2 as DETECTIVE DAMON STRUBLE escorted SCOTT LEONARD into the room.

I advised DETECTIVE DAMON STRUBLE that the room was being recorded and I listened from the Community Resource Unit as the interview took place. SCOTT LEONARD explained that FRANK SCHLISKE is his neighbor at 3320 NW Highway 20 #5 Albany, Benton County, Oregon. He advised that FRANK SCHLISKE came home and contacted him. SCOTT LEONARD described FRANK SCHLISKE as being distraught and very upset. He stated that FRANK SCHLISKE confessed to killing a sex offender. DETECTIVE DAMON STRUBLE took a break and we spoke throughout the interview, developing investigative strategies.

DETECTIVE DAMON STRUBLE returned to the interview room and asked SCOTT LEONARD if he would be willing to meet with FRANK SCHLISKE in person and possibly wear a body wire. SCOTT LEONARD was visibly shaken and he advised that he was too afraid to have face to face contact with FRANK SCHLISKE. He advised that he would be able to call FRANK SCHLISKE on the telephone. During this time, DETECTIVE SCOTT TIMM developed a Photo Line-up (**Evidence Item #202**). I obtained the photo line-up from DETECTIVE SCOTT TIMM and at 1945 hours, I met with SCOTT LEONARD inside Interview Room #2. The DVD Recording was still running and I activated my department issued digital recorder. I advised SCOTT LEONARD that he was being recorded, which he advised that he understood. I read the Photo Line-up Instructions (**Evidence Item #201**) to SCOTT LEONARD, verbatim. He advised that he understood the instructions. I completed the form and asked him to sign the instructions, which he did. I also signed the form, after which I presented him with the Photo Line-up (**Evidence Item #202**) with FRANK SCHLISKE in it to SCOTT LEONARD. Within five seconds of seeing the Photo Line-up (**Evidence Item #202**), SCOTT LEONARD immediately pointed to FRANK SCHLISKE. I asked him which picture on the line up he pointed to and he advised that it was the "**bottom left**" corner of the six photographs. I asked him who the subject was that he identified and he said, "**FRANK**". I asked him to circle the photograph that he identified, which he did. I asked him to label the photograph and he wrote "**FRANK**" under FRANK SCHLISKE's picture.

I asked SCOTT LEONARD how he knew the subject he identified in the photograph and he replied, "**He's my neighbor.**" I asked SCOTT LEONARD on a scale from Zero to One Hundred, how certain he was of his identification. He replied, "**I'm a hundred percent.**" I asked him to write his percentage next to his name, at which time he wrote "**100%**". I asked about the picture and SCOTT LEONARD told me that the subject he identified was the man that confessed to killing an unknown subject. I advised SCOTT LEONARD that we were preparing to conduct a pretext phone call, but that it would be a few minutes.

I advised SCOTT LEONARD that we would like him to call FRANK SCHLISKE and advise that we were calling to check on him. I told him that we just wanted him to try and listen to what FRANK SCHLISKE had to say. I left the room and began preparations to conduct the pretext phone call. I left my digital recorder running as I left the room and I left it on the table. DETECTIVE SCOTT TIMM, DETECTIVE LEAH BINGHAM, DETECTIVE DAMON STRUBLE, CAPTAIN ERIC CARTER, and DETECTIVE RON PARKER were in the Community Resource Unit and they moved to the Detective Unit. They prepared the unit so that SCOTT LEONARD could make a pretext call and so that there were no outside nioses. I escorted SCOTT LEONARD outside and he smoked a cigarette. We walked over to the Detective Unit and went to my desk.

DETECTIVE RON PARKER provided me with an ear piece that SCOTT LEONARD used while making the pretext phone calls. DETECTIVE DAMON STRUBLE obtained a possible phone number for "FRANK" from a witness. SCOTT LEONARD called the phone number as I activated my department issued digital recorder. He spoke with a male subject, who we believe was a FRANK HOGAN and not FRANK SCHLISKE. DETECTIVE DAMON STRUBLE contacted the witness back and obtained the correct phone number for FRANK SCHLISKE. For further information regarding the witness, refer to DETECTIVE DAMON STRUBLE's report. We provided the correct phone number (541) 223-6372 to SCOTT LEONARD and he called the phone number. I activated my department issued digital recorder and advised SCOTT LEONARD that he was being recorded. When he called (541) 223-6372, no one answered and it went to voice mail. SCOTT LEONARD hung up the phone without leaving a message.

I asked SCOTT LEONARD to call FRANK SCHLISKE back and leave a voice mail message for him. I again activated my department issued digital recorder and advised SCOTT LEONARD that he was being recorded. He called (541) 223-6372 again and this time he left a message. SCOTT LEONARD advised FRANK SCHLISKE that he was calling to check on him and make sure he was okay.

SCOTT LEONARD was very visibly shaken and very nervous. Based on the late hour and the inability to contact FRANK SCHLISKE by phone, we asked him if he would take a digital recorder and the ear piece with him to record future calls. He told us that he would and he advised that he would stay with his sister. SCOTT LEONARD told us that FRANK SCHLISKE does not know where his sister lives and that he felt safe at his sister's place. I escorted him to the lobby after showing him how to use the digital recorder. I provided SCOTT LEONARD with contact phone numbers for me and DETECTIVE DAMON STRUBLE. I asked him to call us immediately if he received information or if he had any problems. He thanked me and left the department.

We checked department records and observed that FRANK SCHLISKE previously had contact at 230 SE 6th Avenue. DETECTIVE SCOTT TIMM and I responded to the area of 6th Avenue to see if we could observe FRANK SCHLISKE in the area. DETECTIVE LEAH BINGHAM and DETECTIVE DAMON STRUBLE responded to FRANK SCHLISKE's residence at 3320 NW Highway 20, Apartment #5, Albany, Benton County, Oregon. DETECTIVE SCOTT TIMM and I were unable to locate FRANK SCHLISKE, so we returned to the station. We determined that based on the late hour, that we would continue following up on the case in the morning.

On Saturday, December 1, 2007, at ` `:30 hours, I was on-duty, wearing civilian clothes, displaying my badge, and working as a Detective with the Albany Police Department. I began gathering further information regarding FRANK SCHLISKE and developed an investigative plan for owing up on this investigation. I used SCOTT LEONARD.whitepages.com to check the phone number that DETECTIVE DAMON STRUBLE developed for FRANK SCHLISKE. I learned that is was listed as being a "Teleport Communications" phone number out of "Albany, OR."

At 0932 hours, I called CRIME ANALYST PATRICK HURLEY and asked him to respond to assist on this investigation. He advised that he would respond to assist.

At 0939 hours, I called SCOTT LEONARD on his cellular telephone. He did not answer the telephone, so I left a message asking him to call me right away. I received a phone call from SCOTT LEONARD at 1008 hours on my department issued cell phone. He was very upset, advising that he was scared of FRANK SCHLISKE. He told me that he had not received information from FRANK SCHLISKE and that he was too currently at work. SCOTT LEONARD told me he left his cellular telephone at home and that he was too afraid to contact FRANK SCHLISKE in person or over the telephone. I asked him to bring the digital recorder and ear piece back to the station so that we had it and he advised that he would.

At 1015 hours, CRIME ANALYST PATRICK HURLEY arrived at the Detective Unit. I briefed him on the investigation and asked him to determine the service provider for (541) 223-6372. In addition, I asked him to obtain all pertinent data involving that phone, specifically the calls to and from the phone. He worked to develop the information.

At 1026 hours, CRIME ANALYST PATRICK HURLEY contacted me and advised that the service provider for (541) 223-6372 was NEXTEL. He provided me with a contact phone number for NEXTEL {(800) 877-7330}, which I called. I spoke with the operator, "NICOLE" PEARSON and I advised her of the circumstances surrounding the case. She advised that the circumstances met their requirements to expedite the request. I advised her that I would follow up with a subpoena for the records as well. The operator advised that she would fax me an exigency request and that I needed to complete and fax back to her. I provided her with the Target Phone Number, (541) 223-6372 and she advised that when she received the fax back from me, I could call for the information.

At 1040 hours, I called SENIOR DEPUTY DISTRICT ATTORNEY GEORGE EDER, and briefed him on the case. I advised him that I would write an exigent description to attach to the form and provide it to him for review. He provided me with his e-mail. CRIME ANALYST PATRICK HURLEY provided me with the faxed "MANDATORY INFORMATION FOR EXIGENT CIRCUMSTANCES REQUESTS" form from Sprint Nextel. I wrote the exigent description and e-mailed it to SENIOR DEPUTY DISTRICT ATTORNEY GEORGE EDER for review.

Probable Cause Affidavit

At 1114 hours, I e-mailed SENIOR DEPUTY DISTRICT ATTORNEY GEORGE EDER a fax subpoena and the exigent description for the request from Sprint/Nextel. I prepared the Sprint/Nextel form and awaited a response from SENIOR DEPUTY DISTRICT ATTORNEY GEORGE EDER. He reviewed it and contacted me, advising me to submit it. I faxed the **"MANDATORY INFORMATION FOR EXIGENT CIRCUMSTANCES REQUESTS"** and exigent description **(Evidence Item #207)** to Sprint Corporate Security (913) 315-0818.

At 1144 hours, I called Sprint Corporate Security, and they advised that they received the fax. The operator, "DONNA" advised that she checked the GPS on the Target Phone Number (541) 223-6372, at which time she advised that it was either turned off or someone was talking on it. She prepared the requested documentation and advised me that she would e-mail it to me.

At 1220 hours, I received an e-mail from NICOLE PEARSON, Sprint Corporate Security. I immediately forwarded the e-mail to CRIME ANALYST PATRICK HURLEY for analysis. He and DETECTIVE LEAH BINGHAM worked to develop associate information regarding the cellular telephone.

I observed that the account information from Sprint/Nextel indicated that **"FRANK SCHELENSKI"** was the account holder and that his address was **"333 Jennings St. Lebanon, OR 97355-3954."** I checked Albany Police Department records and observed that FRANK SCHLISKE used the address 333 Jennings Street, Lebanon, Oregon, several times when he was contacted. In addition, I check Linn County Jail records and observed that FRANK SCHLISKE used the 333 Jennings Street, Lebanon, Oregon address when he was previously booked into the jail.

At 1415 hours, I began the process to apply for a search warrant for FRANK SCHLISKE and his residence for evidence of Criminal Homicide. I reviewed the digital recording of the interview that DETECTIVE DAMON STRUBLE had with SCOTT LEONARD. The following is a summary of their conversation:

He told DETECTIVE DAMON STRUBLE that he got home from work on Thursday, November 29, 2007, at approximately 2230 hours. He stated that he went to bed at "12:30" a.m. on Friday, November 30, 2007 and "a little after 1 O'Clock" a pickup pulled up to his duplex. SCOTT LEONARD said that he heard his neighbor, FRANK, go into his own residence and that he heard a knock at his door. He said that he did not answer at first, because FRANK "drinks" and he gets "loud and obnoxious."

SCOTT LEONARD said that FRANK was crying when he answered the door and he stated that he needed to talk. He invited FRANK SCHLISKE into his residence and he sat down. SCOTT LEONARD asked what was wrong, at which time he observed that FRANK SCHLISKE was **"really emotional."** He said that FRANK was hitting is own hands **"hard."** SCOTT LEONARD said that FRANK said **"I killed somebody tonight."**

He said that he asked FRANK if he was sure that the person was dead and FRANK said that he **"strangled"** the person and **"broke his neck."** SCOTT LEONARD said that FRANK was upset because the victim called him a **"liar"**, so he killed him. He said that FRANK said that the victim was a **"pedophile"** and that he **"deserved it."** SCOTT LEONARD said that FRANK was **"really convincing"** and that he himself became scared. He said that FRANK said that he would have to kill SCOTT LEONARD as well.

Probable Cause Affidavit

SCOTT LEONARD said that he encouraged "FRANK" to go home and get some rest. He said that he asked FRANK if he was certain th   he killed someone and he said that FRANK said that he was certain. SCOTT LEONARD said that FRA..K reported the victim as "**quivering.**" He sai    .at FRANK said the people who brought him home advised they would take care of the victim's body. SCOTT LEONARD said that FRANK SCHLISKE went back to his residence.

SCOTT LEONARD said that he called his sister later in the day and he reported the information to his sister. He said that she contacted the police. SCOTT LEONARD said that he was afraid of FRANK and he was not certain what to do. He said that FRANK was "**so emotional**" about telling him about the incident that he felt the homicide did occur. He said that his landlord's son and asked for FRANK's last name, because he did not know it. SCOTT LEONARD said that his landlord's son called the landlord (his mother) and told him the name. He said that the landlord's son told him that "**FRANK**" his neighbor was FRANK SCHLISKE.

SCOTT LEONARD said that FRANK SCHLISKE moved in "**last summer.**" He then advised that he heard from the landlord's son, PETE PYBURN (Date of Birth: 07-18-60), that FRANK SCHLISKE's employer said he was too intoxicated to work the following morning. SCOTT LEONARD said that he planned to stay away from his residence, because he was afraid to be around FRANK SCHLISKE. He said that he told PETE PYBURN that he may give his notice to move out, because of his fear. SCOTT LEONARD said that FRANK SCHLISKE physically showed him how he tried to strange the victim. He said that FRANK SCHLISKE said that it took a bunch of guys to pull him off of the victim. SCOTT LEONARD said that FRANK SCHLISKE said "**Oh my God, I killed him. I killed him.**" He said that FRANK SCHLISKE said that made it sound as if there were several people at the location, but he was not specific.

SCOTT LEONARD was very upset and DETECTIVE DAMON STRUBLE asked him to calm down, take his time and provide as much detail as possible. He then advised that he heard FRANK SCHLISKE knock at his residence door and call his name "**SCOTT.**" SCOTT LEONARD said that FRANK SCHLISKE said, "**I need a hug.**" He said that he gave FRANK SCHLISKE a "**man hug**" and asked him what was wrong. SCOTT LEONARD said that he thought at first that FRANK SCHLISKE was having a problem with his girlfriend. He said that FRANK SCHLISKE was "**hesitant**" and that he started saying "**Oh God, Oh God, I can't believe it.**" SCOTT LEONARD said that he told FRANK SCHLISKE to relax and tell him. He said that FRANK SCHLISKE said, "**I killed a guy tonight.**"

SCOTT LEONARD said that FRANK SCHLISKE went on about how he broke the victim's neck and that people were trying to pull him off the victim. He said that FRANK SCHLISKE said the victim called him a "**liar**" and he told the victim to tell him "**one more time.**" SCOTT LEONARD said that FRANK SCHLISKE called him a "**liar**" and that he went after the victim. He said that FRANK SCHLISKE described beating on the suspect and breaking his neck.

DETECTIVE DAMON STRUBLE asked SCOTT LEONARD if FRANK SCHLISKE told him or showed him how he acted. SCOTT LEONARD said he did not really look at FRANK SCHLISKE. He said he asked FRANK SCHLISKE if the victim was dead. SCOTT LEONARD said that FRANK SCHLISKE replied, "**Oh ya, he's dead, he's dead all right.**" He said that FRANK SCHLISKE was crying and that he had his hands over his face. SCOTT LEONARD said that FRANK SCHLISKE was slugging his own hands.

Probable Cause Affidavit

SCOTT LEONARD said that he found a beer in his fridge and gave it to FRANK SCHLISKE. He said that FRANK SCHLISKE spilled the beer on his computer and desk. SCOTT LEONARD said that he cleaned it up and FRANK SCHLISKE told him that he had to tell someone what happened. He said that during the conversation, FRANK SCHLISKE then stated that he would have to kill him as well. SCOTT LEONARD told me he encouraged FRANK SCHLISKE to go home, saying that everything would be all right. He said that FRANK SCHLISKE said to him that he was there all night. SCOTT LEONARD advised that he indicated to FRANK SCHLISKE that he was home all night, so that he would keep him calm. DETECTIVE DAMON STRUBLE asked SCOTT LEONARD if he felt that FRANK SCHLISKE wanted him to cover for him and SCOTT LEONARD agreed.

SCOTT LEONARD said that FRANK SCHLISKE said his friends told him that he would take care of the victim. He said that FRANK SCHLISKE made it clear to him that he killed somebody. SCOTT LEONARD said FRANK SCHLISKE returned home in a pickup with what he thought was a "roll bar", but he did not know further information. He said that he thought it was a full size pickup. SCOTT LEONARD said that he received a note from PETE PYBURN, which he gave to DETECTIVE DAMON STRUBLE. He said that the landlord's son, PETE PYBURN, told him that FRANK SCHLISKE frequents the residence described on the note. As a course of writing the affidavit, I reviewed the note. The note read, "East of station. Pink House on 6th Street. Grandson lives in shed behind house."

CRIME ANALYST PATRICK HURLEY and DETECTIVE LEAH BINGHAM checked the Sprint/Nextel records regarding the phone numbers that were called to and from the cell phone (541) 223-6372, which PATRICIA PITTS advised he used. They determined that the cell phone (541) 223-6372 called the Metro Taxi Cab, at (541) 926-7272, on the evening of November 29, 2007 at 1655 hours, 1725 hours, and 1733 hours. DETECTIVE GLENN FAIRALL had responded to the station and I asked for his assistance by checking with the Metro Taxi Cab regarding the phone calls. He assisted by conducting a follow-up investigation. He advised that he had information that FRANK SCHLISKE was picked up outside his residence on the evening of November 29, 2007 at taken to 230 SE 6th Avenue, Albany, Oregon.

I checked department records and learned that FRANK SCHLISKE was contacted at 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon, on three separate occasions, September 11, 2006 (Albany Police Case #06-21004), October 1, 2006 (Albany Police Case #06-22820), and January 13, 2007 (Albany Police Case #07-897). During each of the three mentioned contacts at 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon, FRANK SCHLISKE was with DANA SPRAGUE (Date of Birth: 04-23-63). I observed that DANA SPRAGUE was contacted on May 18, 2007 at the same listed apartment regarding a disturbance call (Albany Police Case #07-10864).

I asked DETECTIVE GLENN FAIRALL and DETECTIVE LEAH BINGHAM to follow up on the information and conduct a photo line-up with the taxi personnel. In addition, I asked them to attempt to locate DANA SPRAGUE for an interview. I remained at the station completing the affidavit in application for the search of FRANK SCHLISKE, 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon, as well as FRANK SCHLISKE's residence, 3320 NW Highway 20, Apartment #5, Albany, Benton County, Oregon.

At 1706 Hours, on Saturday, December 1, 2007, DETECTIVE GLENN FAIRALL contacted me, via department cellular telephone. He told me that he had just contacted PAM HOSLEY, a Metro Taxi Cab Driver, in person. DETECTIVE GLENN FAIRALL told me that she positively identified DANA SPRAGUE as the female that she described to DETECTIVE GLENN FAIRALL as "SHERRY."

DETECTIVE GLENN FAIRALL told me that PAM HOSLEY viewed the photo line-up of FRANK SCHLISKE and identified him at "nine out of ten" as the male subject that she transported in her taxi. PAM HOSLEY told DETECTIVE GLENN FAIRALL that FRANK SCHLISKE told her, during his taxi ride that a guy had "ratted" him over and that he was going to pay him back.

At 1856 hours, I received a phone call from SCOTT LEONARD. He advised me that he was at the Econoline Inn, Room #123, in Corvallis, Oregon. SCOTT LEONARD told me he called the same wrong number he called the night prior in an attempt to see if the subject could contact FRANK SCHLISKE. He told me that the subject that he had a heart attack and that he was at the Veteran's Administration Hospital in Portland, Oregon. SCOTT LEONARD told me that he told the subject if he could contact FRANK SCHLISKE and ask him to keep an eye on his residence. He told me that he asked the subject to see if he could contact FRANK SCHLISKE and have him call SCOTT LEONARD on his cellular telephone. SCOTT LEONARD told me that he was recording me when we were talking, because he was trying to make sure to record. I provided him on further instructions regarding the recorder and told him to call me if FRANK SCHLISKE contacted him.

After concluding the call, I called him back and asked him about the clothing that FRANK SCHLISKE was wearing on November 30, 2007, at 0130 hours. He told me that FRANK SCHLISKE was wearing an "Indiana Jones" style light brown hat, dark coat, and dark pants, which were possibly jeans. He told me that FRANK SCHLISKE had a dark colored back pack with him when he arrived as well.

I completed my affidavit for search warrant and e-mailed the drafts to SENIOR DEPUTY DISTRICT ATTORNEY GEORGE EDER. I contacted JUDGE LOCK WILLIAMS and made arrangements to meet him at his residence to obtain a search warrant for FRANK SCHLISKE and his residence.

At 2048 hours, DETECTIVE GLENN FAIRALL and I arrived at JUDGE LOCK WILLIAMS' residence. He reviewed the affidavit and we both signed it. JUDGE LOCK WILLIAMS signed a search warrant for FRANK SCHLISKE and his residence that could be served 24 hours a day within the following ten days. DETECTIVE GLENN FAIRALL and I returned to the station. I contacted CORPORAL ALAN LYNN and asked for an officer to be assigned to assist. OFFICER MIKE WOOD was called in to work to assist. DETECTIVE DAMON STRUBLE was conducing surveillance at FRANK SCHLISKE's residence 3320 NW Highway 20, Apartment #5, Albany, Benton County, Oregon. I asked OFFICER MIKE WOOD to relieve DETECTIVE DAMON STRUBLE so that we could develop a plan on locating FRANK SCHLISKE.

DETECTIVE LEAH BINGHAM and DETECTIVE SCOTT TIMM were conducing surveillance at 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon. They were attempting to find FRANK SCHLISKE and see if DANA SPRAGUE was available for contact without FRANK SCHLISKE being around. It was a very stormy and rainy night. Visibility was very limited and it was difficult to determine who was coming and going from DANA SPRAGUE's residence. I decided that we would secure for the evening and return the following morning to continue the surveillance.

**Sunday, December 2, 2007**

On Sunday, December 2, 2007, at 0800 hours, I was on-duty, wearing civilian clothes, displaying my badge, and working as a Detective with the Albany Police Department. I contacted K-Mart and determined that DANA SPRAGUE was not working on this date. She was next scheduled to work the following day.

I met with DETECTIVE DAMON STRUBLE, DETECTIVE GLENN FAIRALL, DETECTIVE SCOTT TIMM, and DETECTIVE LEAH BINGHAM in the Detective Unit. I asked DETECTIVE DAMON STRUBLE and DETECTIVE GLENN FAIRALL to conduct surveillance on FRANK SCHLISKE's residence at 3320 NW Highway #20, Apartment #5, Albany, Benton County, Oregon. I asked DETECTIVE LEAH BINGHAM and DETECTIVE SCOTT TIMM to conduct surveillance at DANA SPRAGUE's residence, 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon.

I remained in the Detective Unit and prepared a draft affidavit for search warrant and search warrant for 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon, in case we determined that FRANK SCHLISKE was actually inside the residence.

At 0949 hours, DETECTIVE DAMON STRUBLE contacted me, via department issued NEXTEL phone. He advised me that he spoke with BARBARA PYBURN while he was conducting surveillance. DETECTIVE DAMON STRUBLE told me that BARBARA PYBURN told him that she spoke with PATRICIA PITTS. BARBARA PYBURN advised that PATRICIA PITTS spoke with FRANK SCHLISKE recently and that she advised him that she was not going to fire him, but that she was concerned about him showing up to work intoxicated. PATRICIA PITTS advised that FRANK SCHLISKE was staying with friends for a while and that he was not home. At 0953 hours, I called PATRICIA PITTS at her residence, but there was no answer. I left a message asking her to call me on my department issued NEXTEL phone.

At 1006 hours, I received a phone call on my NEXTEL phone from PATRICIA PITTS. I asked to call her back on the department phone, so that it was easier to type. I disconnected the phone call and called her from my desk phone within 5 seconds. She answered and I interviewed her about FRANK SCHLISKE, while typing her statement into the computer.

PATRICIA PITTS told me that FRANK SCHLISKE was going to call the police to **"settle this whole thing."** I asked her what she meant, at which time she told me that she spoke with FRANK SCHLISKE on Saturday, December 1, 2007, and that she told him that the police were looking for him. I advised her that she may have compromised our investigation by telling FRANK SCHLISKE about the whole case. I activated the tape recorder on my desk phone and continued the conversation.

I asked her what happened after she spoke with DETECTIVE DAMON STRUBLE. She told me that FRANK SCHLISKE called her and asked what time he was supposed to go to work. She stated she could not remember when he called, but she thought it was the afternoon. I asked what happened when FRANK SCHLISKE called. She said he wanted to know what time he needed to go to work. PATRICIA PITTS said that she told FRANK SCHLISKE that "DETECTIVE DAMIAN" was looking to talk with him. She told me that she told FRANK SCHLISKE that his neighbor was scared of him and that he supposed stated he killed someone. PATRICIA PITTS told me that FRANK SCHLISKE wanted to immediately call the police department to let them know that this was not true.

She confirmed that she told FRANK SCHLISKE that SCOTT LEONARD was afraid of him and that he killed someone. PATRICIA PITTS told me that she gave FRANK SCHLISKE the phone number for DETECTIVE DAMON STRUBLE and that FRANK SCHLISKE called the department, but there was a recording. She told me that she called the department as well, but there was no answer and she did not leave a message. PATRICIA PITTS then said that FRANK SCHLISKE told her that he called the "DAMIAN" at the police department and left a voice mail message for him. I asked her about the message and she said that FRANK SCHLISKE stated that he said in his message that he wanted DETECTIVE DAMON STRUBLE to call him.

PATRICIA PITTS told me that FRANK SCHLISKE did not have a charger for his phone, but that he received one "last night." She told me that she was going to call him "today." I asked her if she had any way of determining when FRANK SCHLISKE called. She told me that she could check her caller identification on her home phone and let me know. PATRICIA PITTS then told me that she initially called FRANK SCHLISKE to see if he could work. This was different from when she said that FRANK SCHLISKE called her initially.

I advised her that I would hang up and give her a moment to check her caller identification, after which I would call her again. I hung up the phone and waited, after which I called her again at her home phone (541) 928-9529. She answered and we continued our conversation. She told me that FRANK SCHLISKE called her at "5:05" p.m. on Saturday, December 1, 2007. PATRICIA PITTS told me that she did not have the time that she called him, but she thought that it was "half hour maybe", before he called her back. I confirmed with her that she told FRANK SCHLISKE that the police were looking for him and I asked if she told him anything else.

PATRICIA PITTS told me that she did tell FRANK SCHLISKE that the police accidentally called "FRANKIE", who she identified as "FRANK HOGAN" another employee. She explained that the police apparently made ruse call accidentally to FRANK HOGAN, thinking that it was FRANK SCHLISKE. PATRICIA PITTS told me that she told FRANK SCHLISKE about the ruse call, because "FRANKIE" HOGAN wanted to know what it was all about. She advised that she provided the wrong phone number for FRANK SCHLISKE and that she then gave DETECTIVE DAMON STRUBLE the correct one later when SCOTT LEONARD made his call.

Probable Cause Affidavit

She told me that FRANK SCHLISKE ... talked with FRANK SCHLISKE after he called her back at 1705
hours on Saturday, December 1, 2007. PATRICIA PITTS told me that FRANK SCHLISKE called her
from (541) "990-3515". I asked her about the identity of the phone owner    she advised "ROY
SAPP". It sounded as if she was rummaging through papers as she spoke with me, at which time she
confirmed the phone number (541) "990-3515." She explained that FRANK SCHLISKE called her from
"ROY SAPP's number" at 1705 hours on December 1, 2007 and this was the last time she spoke with
him. She told me that ROY SAPP is her "ex-husband" and that FRANK SCHLISKE goes and prays
with him. She said that FRANK SCHLISKE did not have his charger and that she assumed that he went
home. PATRICIA PITTS said that FRANK SCHLISKE would not stay with ROY SAPP, because ROY
SAPP lives at "Alterra" Retirement home. She told me that she received information from BARBARA
PYBURN on December 1, 2007 that FRANK SCHLISKE left his residence and walked into town, this is
why she thought he was walking.

PATRICIA PITTS said "they have all been calling me". She said that KATHY LEONARD called her
and that she believes that KATHY LEONARD is making more out of it, because FRANK SCHLISKE
was "drunk." PATRICIA PITTS then said that she told BARBARA PYBURN that SCOTT LEONARD
and FRANK SCHLISKE were "drinking buddies" and that "SCOTT befriended FRANK." She told
me that SCOTT LEONARD and FRANK SCHLISKE went out to Thanksgiving dinner together and she
again described them as "drinking buddies." PATRICIA PITTS said that FRANK SCHLISKE has
called her from SCOTT LEONARD's residence before. She described the situation as "crazy."

She told me that BARBARA PYBURN called her and asked if she was going to not fire FRANK
SCHLISKE. PATRICIA PITTS told me that she told BARBARA PYBURN that PETE PYBURN was
the person that asked her not to fire FRANK SCHLISKE and that she did not plan to fire him. She told
me that the detective told her that we would not tell her how to run her business. I asked her how
FRANK SCHLISKE knew ROY SAPP and she said that ROY SAPP is her "ex-husband" and that
FRANK SCHLISKE gets depressed. She stated that FRANK SCHLISKE has been homeless before and
that she gave him a job. PATRICIA PITTS told me that FRANK SCHLISKE went over to "SCOTT's
house" and that he was "suicidal", stating that she learned about it after the fact and she also advised that
this was another situation different from the one we were talking about.

I confirmed that this was the last time that she supposedly had contact with FRANK SCHLISKE. She
then stated that ROY SAPP told her that FRANK SCHLISKE went home. I asked her for FRANK
SCHLISKE's name and PATRICIA PITTS stammered, stating "That isn't his girlfriend." She said that
FRANK SCHLISKE had an ex-girlfriend named "PATSY", but that he did not have current girlfriend.
PATRICIA PITTS told me that FRANK SCHLISKE hung out on 6th Street, describing it to be a pink
house after Swanson Park.

She told me that FRANK SCHLISKE goes and visits a girl named "DANA" on 6th Avenue in the same
area, but she is not his girlfriend. PATRICIA PITTS told me, "In fact he said that was who he was
with Thursday night." She confirmed that FRANK SCHLISKE said that he was with "DANA" on
"Thursday" night and that "DANA" works at "K-Mart." PATRICIA PITTS rambled very quickly and
she was extremely nervous. I asked her when FRANK SCHLISKE told her that he was with "DANA".
She began to reply and I heard a click on the line. PATRICIA PITTS advised that she had a call coming
in and she was going to check and see who it was, at which time I advised her that I did not want her to
speak with anyone at the moment. She did not answer the phone.

Probable Cause Affidavit

led him ... [illegible] ... when ... back ... for him to say he did not get a hold of the police. She advised that this was where FRANK SCHLISKE was "**drinking**", describing it on "**6**" **Street**" as a white apartment, just past the fire ... tion. PATRICIA PITTS told me that DANA "ves "**upstairs**" and that she works at "**K-Mart**." She said that he walked home on the night in question and that no one dropped him off. PATRICIA PITTS said that FRANK SCHLISKE said that he was drinking with "**DANA**" and I asked what he specifically said.

PATRICIA PITTS told me she asked FRANK SCHLISKE if he remembered making the statements to SCOTT LEONARD and FRANK SCHLISKE stated he did not remember. She told me that FRANK SCHLISKE said that he may have said something stupid, but that he thought that "**SCOTT**" was his friend. PATRICIA PITTS said that FRANK SCHLISKE said he did not remember what he said. She told me that all she knew was that "**DANA was there**" and that FRANK SCHLISKE "**drank a lot.**" PATRICIA PITTS told me that her daughter told her that FRANK SCHLISKE should know what is going on and she said that she thought he should know as well. She then stated that she did not believe that anything happened.

I asked her about remembering talking with DETECTIVE DAMON STRUBLE and she interrupted me, stating that she did not remember telling her not to talk. She continued to ramble and then said that the "**land lady**" and "**PETE**" told her several times not to talk with FRANK SCHLISKE. PATRICIA PITTS told me that she was certain that DETECTIVE DAMON STRUBLE must have told her not to talk. I advised her again that her actions may have compromised our case and I advised her that she could not talk with FRANK SCHLISKE. I advised her that her actions hindered our prosecution and that it was a "**felony**" for her to continue and talk with people about the case. She stated that she "**messed up**" by giving the wrong phone number to DETECTIVE DAMON STRUBLE in the first place.

I told her that if FRANK SCHLISKE calls her, that she was not to talk with her on the phone. She asked if she was supposed to pick him up for work on Monday. I pointed out that if FRANK SCHLISKE wanted to talk with us, he could have contacted us, but that he had not. I told her that I needed to speak with other detectives and I advised her to wait for my phone call. She then interjected that she was supposed to pick up FRANK SCHLISKE to work at a "**trucking company**" in Lebanon today and she asked if I wanted her to pick him up. It became very apparent that she was in constant contact with FRANK SCHLISKE. I asked her when she was supposed to pick him up, at which time she said he did not have a charger and that she had to call him. I asked her where she was supposed to pick him up and she advised at his residence.

I asked me if she wanted me to find out what time she was going to pick him up from work. I advised her that I did not want her to call him, because it was apparent in my mind that she was definitely aiding FRANK SCHLISKE in learning about the case. I advised her to not do anything for "**ten minutes**" so that I could talk with my partners and she agreed. I asked her to not answer the phone unless it was me calling. She agreed and I ended the phone call. I stopped the recorder and quickly summarized the call by typing it as listed above.

Probable Cause Affidavit

I asked ROY SAPP if FRANK . _HLISKE talked about anything. He replied, "no", stating just that his "neighbor" got things messed up. I asked ROY SAPP what he meant, at which time he advised that he and his "FRANK" him what happened. I asked him what "FRANK" said and he advised that he and his neighbor were talking and he said some things that were "misconstrued." ROY SAPP said that FRANK SCHLISKE referred to conversations that were misconstrued as "war stories", saying "that was all he said."

I asked ROY SAPP if FRANK SCHLISKE just showed up at his residence or if he had a planned meeting. He advised me that FRANK SCHLISKE "he just showed up." ROY SAPP told me that his ex-wife, PATRICIA PITTS, called him and told him that FRANK SCHLISKE was going to come over and visit. He said that PATRICIA PITTS called him at "2:00" on December 1, 2007 and told him that "FRANK's going to come over and use your phone." He told me that he and FRANK are "friends". I asked him if he felt that it was unusual for PATRICIA PITTS to arrange for FRANK SCHLISKE to come over and use his phone. He advised that he did not see anything wrong with it.

We returned to the station and I prepared a search warrant for the residence at 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon. At 1321 hours, I called DETECTIVE LEAH BINGHAM from my office phone. She advised me that she observed DANA SPRAGUE walk into apartment #4, just a few minutes prior to my call. I asked DETECTIVE LEAH BINGHAM how certain she was that it was DANA SPRAGUE, at which time she replied, "Absolutely positive."

I completed my affidavit and search warrant, after which OFFICER DAN JONES and I responded to JUDGE CAROL BISPHAM's residence. JUDGE CAROL BISPHAM signed the search warrant for 230 SE 6th Avenue SE, Apartment #4, Albany, Linn County, Oregon. We responded to the Albany Police Department and I made a copy of the original search warrant. I provided one copy of the signed search warrant to OFFICER DAN JONES and I asked him to return to JUDGE CAROL BISPHAM's residence and give her the copy.

I contacted OFFICER SCOTT MCBRIDE, OFFICER KEN FANDREM, OFFICER JOHN TRANTHAM, DETECTIVE GLENN FAIRALL, and DETECTIVE DAMON STRUBLE and briefed them on the search warrants that we were preparing to serve. I asked DETECTIVE DAMON STRUBLE to take the lead on the 3320 NW Highway 20, Apartment #5, Albany, Benton County, Oregon, warrant. We decided that we would respond to FRANK SCHLISKE's residence first and secure it, after which we would serve the warrant at DANA SPRAGUE's residence.

DETECTIVE DAMON STRUBLE responded to BARBARA PYBURN's residence and obtained a key to FRANK SCHLISKE's residence. I was dressed in civilian clothes and wearing a black (*Hidden Agenda*) jacket with "POLICE" patches and cloth Albany Police badge displayed. DETECTIVE GLENN FAIRALL and I drove together in an unmarked Albany Police detective Ford Taurus to 3320 NW Highway #20, Apartment #5, Albany, Benton County, Oregon. Upon arriving, we parked in front of the residence and DETECTIVE DAMON STRUBLE knocked and announced at the front door.

No one answered the doc... ...s DETECTIVE DAMON STRUBLE knocked several times and announced that we were "POLICE" with a "SEARCH WARRANT." He acc... ...d the door by using a card between the door knob and door jamb. After DETECTIVE DAMON STRUBLE opened the front door, I was the first person to enter. I continued to announce, "POLICE OFFICER WITH A SEARCH WARRANT." No one responded as I continued throughout the residence and we checked the entire residence. No one was home and we determined that the residence was clear.

DETECTIVE DAMON STRUBLE advised that he and OFFICER ROBERT HAYES would be fine alone at the location, at which time DETECTIVE GLENN FAIRALL, OFFICER SCOTT MCBRIDE, OFFICER KEN FANDREM, OFFICER DAN JONES, and I left the residence. We stopped very briefly in the City Hall parking lot, 333 Broadalbin Street SW, Albany, Linn County, Oregon, and I briefed officers on how we would tactically approach the residence. We continued to the residence driving southbound on Ellsworth Street, eastbound on 9th Avenue, northbound on Lyon Street, eastbound on 7th Avenue, and northbound on Montgomery Street. I parked on Montgomery Street, just south of the intersection of 6th Avenue.

We met with DETECTIVE LEAH BINGHAM and DETECTIVE SCOTT TIMM near the southwest corner of the intersection and I requested that they stay on the stairs ready to come up as DETECTIVE GLENN FAIRALL and I knocked at the front door. Officers surrounded the residence, at which time DETECTIVE GLENN FAIRALL and I ascended the staircase. I knocked at the front door. I waited and knocked again, but there was no answer. I knocked a third time and started to announce that I had a search warrant, but I was not able to say anything before the door opened. I immediately recognized DANA SPRAGUE and I asked her, "Can we come in?" She replied, "Sure." I introduced myself, DETECTIVE GLENN FAIRALL, DETECTIVE LEAH BINGHAM, and DETECTIVE SCOTT TIMM to DANA SPRAGUE.   We spoke for a while and she advised me that "BRETT HINCK", "CHRISTINA", and "DAVE" were over when FRANK SCHLISKE was at her residence on Thursday, November 29, 2007. She told me that they were drinking and hanging out. I advised her that we had a search warrant and I read it to her verbatim. I provided her with a copy of the search warrant as well. She told me that FRANK SCHLISKE was at her residence on Thursday, November 29, 2007 in the early evening and that when he arrived she could see that he had been drinking. DANA SPRAGUE told me that FRANK SCHLISKE became agitated throughout the evening and that at one point he walked outside the residence.

She told me that she heard what she thought was FRANK SCHLISKE banging on the downstairs neighbor's door and she heard a crash, which sounded like someone falling down the stairs. She told me she did not look outside, but when FRANK SCHLISKE returned a short while later she gave him his property and asked him to leave. DANA SPRAGUE told me that BRETT HINCK transported FRANK SCHLISKE home in his pick up. At 1637 hours, during my interview with DANA SPRAGUE, I received a phone call from DETECTIVE AARON DAVIS. He advised me that FRANK SCHLISKE was outside the residence at 2666 SE 16th Avenue, Albany, Linn County, Oregon. I contacted DETECTIVE GLENN FAIRALL by cell phone and asked him to respond and contact FRANK SCHLISKE.

Prior to leaving the 230 SE 6th Avenue, Apartment #4, Albany, Linn County, Oregon, DETECTIVE LEAH BINGHAM asked me to check the bathroom. I observed what appeared to be specks of blood on the sink. I later asked DANA SPRAGUE about the blood and she was not certain how the blood got there.

I contacted DETECTIVE DAVID SITTON to take over the interview with DANA SPRAGUE. I
CHRISTINA DAVIS and DAVID SITTON as being at her residence, stating there was not certain
asked DETECTIVE LEAH BINGHAM to take over the interview with DANA SPRAGUE. I was not certain
the photo line-ups to her. She later contacted me and advised the DANA SPRAGUE was not certain
CHRISTINA DAVIS and DAVID SITTON as being at her residence during the evening. She told me the
asked DANA SPRAGUE if anyone else came to her residence during the evening. She told me that no
one else showed up, even briefly, at her residence.

DETECTIVE RON PARKER briefed me on his conversations with FRANK SCHLISKE's current
girlfriend, PATSY OSTERMON. He advised that FRANK SCHLISKE was located at PATSY
OSTERMON's residence, at 2666 SE 16th Avenue, Albany, Oregon. I asked DETECTIVE RON
PARKER to e-mail me the information that he obtained from PATSY OSTERMON. I received his e-
mail and I copied the following information from the e-mail into this report:

"I went to the front door of the location and identified myself to Osterman. I asked if I could come in and
speak with her. She invited me in and after asking the children to go upstairs she sat down and asked me
what was going on. I asked her if she was Schliske's girlfriend she stated she wasn't as they had broke up
in mid November but that they were still friends. I asked her how long Schliske had been staying at her
residence. She stated he has been there since Friday evening. I confirmed that he had spent the last two
nights there and she stated he had. I asked her why they were not boyfriend and girlfriend any longer and
she stated she couldn't deal with his drinking any longer. She stated she lived with him in North Albany for
about two months but moved out because she couldn't deal with his drinking any longer. She told me that
he is a mean drunk. She told me he has never laid a hand on her but he gets really abusive verbally when
he drinks. She told me she has never seen him physically violent with anyone but he is a "real asshole"
when he gets drunk. I asked her if Schliske has any property at this residence and she pointed to a
backpack sitting against the south wall of the dining room and stated the backpack was his as well as the
jacket hanging on the chair and a bag of tobacco in the garage. I asked her if there were any dirty clothes
in the residence belonging to Schliske and she stated he is still wearing the same clothes he was wearing
when she picked him up on Friday evening.

I asked her if she minded the police checking the residence for anything else that might belong to Schliske.
She stated she had no problem with that. I provided her an Albany Police Department "Consent To
Search" form. I listed the "Residence of 2666 SE 16th Ave; Albany" as the description on the form and
asked her if she was willing to sign the consent form. She read the form and signed it. As she handed it to
me she stated that the police could look where ever they needed to look as she did not have a problem with
that. Once the form was signed, I signed as the witness and informed Detective Davis we could search the
residence. Detective Davis then seized the items belonging to Schliske as I continued to speak with
Osterman. The consent to search form is attached with this report.

Osterman again wanted to know what this was about. I told her I would tell her what I could in a little
while but that I needed to speak with her without her knowing any specifics first. I asked her if Schliske had
confided to her anything that might have happened in the last few days. She stated that Schliske told her
that his neighbor had told the police that he threatened him on Thursday night. He told her that he needed
to go downtown to talk to the cops so he could get this straightened out. She stated he didn't tell her this
until today. I asked her where Schliske had been Thursday night and she stated she thinks he was at his old
neighbor's house. She stated she isn't sure where it's at but that the person living there is named Dana.
She stated she doesn't know if Dana is a man or a woman but after he was at Dana's house and that was when
he supposedly threatened his neighbor. He told her he went to work Friday morning but his boss brought
so she didn't ask. She stated that someone took him home after he was at Dana's house and that was when
him back home because he was too hung over.

Probable Cause Affidavit

*Osterman stated that Schliske had ... . She checked her voicemail ... . The message stated, "Heidi, it's ... stated it still might be on him ... he found it out. ... listened to the message that come in at approximately 11:30 pm Thursday. ... Frank. Give me a call. I need ... ur help. Bye." She stated she didn't call him back as she figured he was just drunk again.*

*I asked Osterman how often Schliske stays at her residence. She stated he hasn't stayed there lately. She stated that once in a while they would stay a night when they were together when Heidi (Osterman's daughter) would need help watching the kids or if she was freaked out staying alone when her husband would go out of town. She stated he hasn't stayed there since they broke it off in November. I asked her who Schliske usually hangs out with. She stated that his best friend is named Brian. She stated she doesn't know Brian's last name but knows that Brian lives with his grandmother and that Schliske also refers to her as his grandmother. She stated that Brian lives 4 or 5 blocks south of the Foghorn Bar. I asked her why she would let Schliske stay at her house for so long. She stated that he was too drunk to go home Friday night and that he was asleep when she got home last night. She stated that Schliske asked to stay one more night and that he was going to go back home tomorrow. She added she did find it kind of weird because he usually worked on Sundays. I told her I found it unusual that she would allow him to stay for three nights when she knows he has his own place in North Albany and gave her no reasons why he couldn't go home. She stated she understands what I am saying but she just really didn't think about it.*

*I asked Osterman to tell me about this weekend from when Schliske first asked her to bring him to her residence. She stated that Schliske called her around "7ish or 8ish" to pick him up by the Foghorn. She stated she is not sure about the time but knew it was dark outside. She stated she went to pick him up and all he had was the clothes he was wearing, the jacket, and the backpack. She stated the backpack had beer in it. She stated she brought him to the house and he ended up drinking and falling asleep in a dining room chair. She stated that she went to bed and then left the house about noon on Saturday to visit a friend in Lebanon. She stated Schliske was asleep on living room chair when she left Saturday and was asleep on the couch when she returned about 3:00 am early this morning. She stated they spoke a little this afternoon since he was sober but he really didn't say much except the part about needing to talk to the cops about his neighbor saying he threatened him. She stated she did kind of find it weird that he was also talking about this Bible student in Benton County that raped about nine women and then only got 2 years because he was an alcoholic and raped the women during his blackouts. I asked her what started that conversation and she stated she didn't know, that was why she found it weird. She added that she has pretty much gotten used to just ignoring Schliske when he spoke but remembered him talking about that for some reason. I asked her if Schliske ever did anything to her and then blamed it on a blackout. She stated he had yelled at her before and then claimed he didn't remember it the next day but he never physically assaulted her. I asked her if there was anything else she could think of that the police would be interested in. She stated she couldn't think of anything right now. I provided her my business card and wrote Detective Corder's name and phone number on it. I told her that Detective Corder was the primary investigator of this case and could tell her more as I didn't have all the specifics of the case.*

*As I was interviewing Osterman, Heidi Dawn Haji Mohamed arrived at the location. Heidi is Osterman's daughter and is the primary tenant of the residence along with her husband and three children. Osterman has been staying there for the last few weeks and is planning to move when she is able. I explained to Heidi what was going on and confirmed that she did not have a problem with the police looking through her residence either. She stated she didn't and I explained to her I would talk with her further after I am finished speaking with her mother. She stated that was fine.*

Probable Cause Affidavit

*Holdings, Inc." She stated her husband is out of town on business and when she has to ... helps with watching the kids when her husband is out of town on business and when she ... She asked her when Schliske came over and she confirmed that her mother brought him here over Friday night. She stated she doesn't like h... mother bringing him here but the kids do like h... and he didn't get out of hand. She stated her mother has remained friends with him even after they brok... off.*

*I asked Heidi if Schliske had confided anything to her that he might have done during the last few days. She stated that on Saturday afternoon, after her mother had gone, that Schliske mentioned he had been talking war stories with a neighbor. She stated that Schliske told this neighbor that he was going to hit somebody over the head or something like that. He told her he remembers telling the neighbor he was going to hurt the other guy but doesn't remember threatening the neighbor. He told her the neighbor has since accused him of threatening him so the police are looking to talk to him. Heidi stated that she told Schliske he couldn't get in trouble for just threatening someone unless he tried to follow through with the threat. She stated that Schliske then leaned over towards her and whispered, "Not for murder charges." She stated she asked Schliske, "You didn't do that did you?" and Schliske stated, "No, I haven't done anything." She added that Schliske whispered it because the kids were around. She told Schliske that he needed to get this taken care of if the police were looking for him. She stated that Schliske left on foot a short time later.*

*Heidi stated that Schliske returned after about 30 minutes (about 5:15 pm). He told her that he talked to the detective and they are not looking for him anymore. He told her he has to go to court on Monday and get it taken care of. She told him he couldn't get it taken care of yet because it is the weekend. I asked her what time he told her about the threats story she told me earlier and she stated it was probably half an hour before he left, so it was probably around 4 or so on Saturday afternoon.*

*I asked Heidi if she went with her mother to pick up Schliske on Friday night and she stated she did not. She stated that Schliske had actually called the house Thursday night and left a message. She grabbed the phone and checked it. After checking her messages she stated she must have deleted it. I asked her what the message said. She stated it said something like, "This is Frank. I need to talk to Patsy, I need her help. Have her call me." She stated that message was left sometime around 11:30 Thursday night. I asked her if anyone has called here looking for Schliske. She stated that his boss called Saturday afternoon. I asked her when and she stated it should be on the caller ID. She then started inspecting the caller ID on her phone and showed it to me. The number read Pat Pitt 541-928-9539. The caller ID indicated the call came in at 2:53 pm on 12/01/07. She then stated that now that she thinks about it then Schliske has been pretty quiet since receiving that call. I asked what she meant and she stated, "Like he was thinking abut something real hard."*

*Heidi stated Schliske has never stayed at her house this long before. She stated he has stayed one night at a time when he and her mother were together but never stayed more then just one night. She stated she knew she should have made him leave yesterday but that he wasn't that drunk last night and her mother didn't get home until really late. I asked her if she had anything else to add. She stated she can't think of anything right now. I told her I had provided her mother a business card with Detective Corder's name on it should she think of anything in the future. I then asked her if she could take a walk through the house with me to make sure there is nothing left in the house that might belong to Schliske."*

Probable Cause Affidavit

At 1918 hours, I contacted DETECTIVE ... ... BRETT HINCK. DETECTIVE SCOTT TIMM advised that JONES were en route to meet ... at his parents' residence at 33288 Hinck Road, Albany, BRETT HINCK's pickup is currently located at his parents' residence at 33288 Hinck Road, Albany, Linn County, Oregon. DETECTIVE SCOTT TIMM later advised me that BRETT HINCK positively identified CHRISTINA DAVIS and DAVID SITTON at 100% as being at the ... ...ering in DANA SPRAGUE's residence.

At 1940 hours, DETECTIVE SCOTT TIMM advised me that he had consent to search the pickup that BRETT HINCK told him that he drove FRANK SCHLISKE in the early morning of November 30, 2007. He advised that the pickup was still at BRETT HINCK's parent's residence at 33288 Hinck Road, Albany, Oregon.

At 2033 hours, DETECTIVE RON PARKER contacted me, via cellular telephone and advised that he received consent to search BRETT HINCK's pickup. He asked me what I wanted done, at which time I asked him to have the vehicle towed to Albany Fire Department Station #12 covered storage for the crime lab to be able to process it. DETECTIVE RON PARKER advised me that he would have the paperwork completed and have the vehicle towed.

At 2035 hours, DETECTIVE GLENN FAIRALL contacted me and I gave him a cigarette that DANA SPRAGUE gave me. I briefed him about BRETT HINCK's vehicle being towed and advised him that the Oregon State Police Crime Laboratory was at the 230 SE 6th Avenue, Apartment #4, Albany, Oregon, address.

At 2116 hours, I contacted DETECTIVE LEAH BINGHAM and OFFICER DAN KLOSS. I requested that they contact DETECTIVE GLENN FAIRALL and check the residence of a place that BRETT HINCK took FRANK SCHLISKE on the evening in question. I also requested that they attempt to locate CHRISTINA DAVIS and DAVID SITTON. I learned from DETECTIVE DAMON STRUBLE that CHRISTINA DAVIS contacted her mother and advised that she was at the Oregon Coast for the weekend. In addition, I learned from DETECTIVE DAMON STRUBLE that a couple came to the residence for a brief period of time and that they left. This was directly opposite of what DANA SPRAGUE told me. DETECTIVE DAMON STRUBLE said that the husband of the couple told him that he saw DAVID SITTON on the couch when he returned to the residence at 0930 hours to pickup DANA SPRAGUE to take her to work.

At 2128 hours, DETECTIVE RON PARKER called me on my department issued NEXTEL phone. He advised me that he secured the red 1971 Ford F-250 pickup, Oregon License: PMA467, at the Albany Fire Department storage facility. He requested an evidence item number and I requested that he use the 600 series of numbers. DETECTIVE RON PARKER advised that he was en route to the station to contact BRETT HINCK and provide him with a receipt for the pickup.

Probable Cause Affidavit

DETECTIVE GLENN GALL interviewed FRANK SCHLISKE and he could [ ] as I watched him while I was writing this affidavit. He typed the below information into this affidavit.

"I conducted an interview with Frank Schliske over the course of several hours starting around 1700 hours. At various times in the interview Frank Schliske told me the following; that he had "BLACKED OUT", while at 230 SE 6th Avenue #4 on the evening of 11-29-07. He told me that he was frightened that he had hurt someone. He told me that it had been an "ACCIDENT" if he did hurt someone, while at 230 SE 6th Avenue #4 on the night of 11-29-07. He told me that he had consumed large quantities of alcohol and smoked methamphetamine, while at 230 SE 6th Avenue #4. He told me that he becomes aggressive and angry when he becomes intoxicated. He told me that his heart told him that he didn't hurt anyone but his head told him that he had hurt someone. At many times Frank Schliske cried, while he made these statements. He also told me that he remembered that night well enough to be sure that he hadn't hurt, injured, or killed anyone. Frank Schliske eventually returned to telling me that he didn't remember what took place and that whatever he did was an "ACCIDENT".

SUBSCRIBED AND SWORN to before me this 3rd day of _Dec_, 2007.

_C Blehm_
Release Officer / Notary Public for Oregon, my commission expires
6-22-09

OFFICIAL SEAL
C SLEHM
NOTARY PUBLIC-OREGON
COMMISSION NO. 391592
MY COMMISSION EXPIRES JUNE 22, 2009

## FINDINGS

{  }   I find probable cause exists to believe the arrestee committed the following crime(s).

CHARGES:

{  }   I find insufficient probable cause exists based upon the information provided herein.

Date: _____   Time: _____

Judge: _____

Probable Cause Affidavit

**IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR LINN COUNTY**

| | | |
|---|---|---|
| STATE OF OREGON, | ) | MOTION AND JUDGMENT |
| Plaintiff, | ) | ORDER TO DISMISS |
| | ) | |
| vs. | ) | Case No. 07122661 |
| | ) | |
| FRANK WADE SCHLISKE, | ) | |
| | ) | |
| Defendant(s). | ) | |

Defendant Info:
45131145 Control#
_____ Presiding Judge  03/28/1969 DOB
_____ Court Reporter  OR 8398782 SID#
_____(Deputy)District Attorney
_____Defense Attorney  ALP 07-26493 Agency#

COMES NOW, the District Attorney in and for Linn County, State of Oregon,

and respectfully moves the Court for a Judgment Order dismissing the Amended District Attorney's

information  with out prejudice dated December 4, 2007 on file in the above entitled case based

upon the interests of justice.

Dated this 10th day of December, 2007.

_____

Heidi Sternhagen, OSB #92471
Deputy District Attorney

_____

JUDGMENT

IT IS SO ORDERED.

DATED this of _____ day of _____, 20_____.

_____

CIRCUIT JUDGE

Page 1



**LINN COUNTY DISTRICT ATTORNEY**

County Courthouse, Fourth & Broadalbin Streets
Post Office Box 100, Albany, Oregon 97321
Telephone (541) 967-3836 • FAX (541) 928-3501

GEORGE EDER
ELLEN LOY DAY
COLEEN E. CERDA
JONATHAN CROW
BRENDAN KANE
DOUGLAS MARTEENY
KEITH B. STEIN
HEIDI STERNHAGEN
MARSHALL L. WILDE
MICHAEL B. WYNHAUSEN
ANI YARDUMIAN

**CIVIL DEPUTIES**
MICHAEL E. ADAMS
THOMAS NATHAN CORR
EUGENE J. KARANDY II
541-967-3840

**Victim Services**
541-967-3805

DATE: December 6, 2007

TO: Dave Delsman

RE:    State of Oregon vs. FRANK WADE SCHLISKE
       Case No. 07122661

Please find enclosed copies of the material and information in the above captioned case, as specified in the discovery statutes and Sentencing Guidelines.

It is our intention to provide you with all discoverable materials as they come into our office. However, should you have any questions about discoverable materials, you should feel free to personally inspect our case file.

We do not, except upon specific request, provide copies of foundational documents for breath tests, prior conviction orders and diagrams, maps and photos, audio or video tapes, CD-ROMs or DVDs. These items are available for your inspection and review in our office.

As soon as practicable after the matter is set for trial, we will advise you of the witnesses that the State may call and the evidence that we intend to offer at trial. As you know, the discovery statutes provide for reciprocal pretrial discovery. The State expects that you will promptly notify this office of the material and information prescribed, as you become aware of it.

The State also expects that you will immediately provide written notice to this office of any error in the proposed criminal history summary.

Very truly yours,

Jason Carlile
District Attorney

JSC/HS/da

Enclosures

# IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR LINN COUNTY

STATE OF OREGON, )
                                     )
        Plaintiff, )     **AMENDED**
                                     )     DISTRICT ATTORNEY'S INFORMATION
    vs. )
                                     )     Case No. 07122661
FRANK WADE SCHLISKE, )
                                     )
        Defendant(s). )

The District Attorney of Linn County, State of Oregon, accuses the above named defendant(s) of the offense(s) of

Count 1:    MANSLAUGHTER IN THE FIRST DEGREE (FSG=10; A Felony; ORS 163.118)
           FPC#: 45131145

committed as follows:

The defendant, on or about November 29, 2007, in Linn County, Oregon, did unlawfully and recklessly, under circumstances manifesting extreme indifference to the value of human life, cause the death of another unnamed human being,

contrary to the statutes and against the peace and dignity of the State of Oregon.

Dated this day: December 4, 2007

By _____
Heidi Sternhagen, OSB # 92471
(Deputy) District Attorney

Trial attorney for the State: Heidi Sternhagen, OSB # 92471

Jason Carlile
District Attorney
PO Box 100
Albany OR 97321
541-967-3836   Page 1- Information, State v. FRANK WADE SCHLISKE, Case No. 07122661

1

2

### IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR LINN COUNTY

3

4

5   STATE OF OREGON,                    )
                                         )
6                 Plaintiff,            )        DISTRICT ATTORNEY'S INFORMATION
                                         )
7        vs.                            )        Case No. 07122661
                                         )
8   FRANK WADE SCHLISKE,                )
                                         )
9                 Defendant(s).         )

10          The District Attorney of Linn County, State of Oregon, accuses the above named defendant(s)

11   of the offense(s) of

12   Count 1:      MANSLAUGHTER IN THE FIRST DEGREE (FSG=10; A Felony; ORS 163.118)
                   FPC#: 45131145

13

14   committed as follows:

15   The defendant, on or about November 29, 2007, in Linn County, Oregon, did unlawfully and
     recklessly, under circumstances manifesting extreme indifference to the value of human life, cause the
16   death of another human being,  David Russell Sitton;

17   contrary to the statutes and against the peace and dignity of the State of Oregon.

18   Dated this day: December 4, 2007

19   By _____
     Heidi Sternhagen, OSB # 92471
20   (Deputy) District Attorney

21   Trial attorney for the State: Heidi Sternhagen, OSB # 92471

22

23

# CRIMINAL HISTORY WORKSHEET

| Offender's Last Name | First | Middle | OB |
|---|---|---|---|
| Schliske | Frank | Wade | 032869 |

CONVICTION TYPE

CHECK OFF THE CONVICTIONS NOT RELIED UPON TO ESTABLISH THE CRIMINAL HISTORY CLASSIFICATION IN THIS CASE.

| OFFENSE TITLE | COURT AND CASE # | CONVICTION DATE | Juvenile Felony Pers | Juvenile Felony Non | Adult Felony Pers | Adult Felony Non | Class-A Pers | Class-A Non |
|---|---|---|---|---|---|---|---|---|
| 1. DUII | Benton | 2/96 | | | | | | x |
| 2. ATEPO | Linn 99051126 | 8/99 | | | | x | | |
| 3. Felon in Possession of a weapon – firearm | Linn 02051071 | 5/02 | | | | x | | |
| 4. DUII | Linn 99051125 | 8/99 | | | | | | x |
| 5. Theft 2nd degree | Linn 98020313FB | 4/98 | | | | | | x |
| 6. DWS | Leb muni 9201093 | 9/92 | | | | | | x |
| 7. DUII | Leb muni 9201092 | 9/92 | | | | | | x |
| 8. DWS | Leb muni 9112233 | 9/92 | | | | | | x |
| 9. DCS – minor | Leb muni 0912232 | 9/92 | | | | | | x |
| 10. DWS | Leb muni 9011047 | 12/90 | | | | | | x |
| 11. DWS | Leb muni 9012250 | 2/91 | | | | | x | |
| 12. Assault 4 | Linn 90122807M | 1/91 | | | | | | x |
| 13. DWS | Marion 90D108544 | 1/91 | | | | | | x |
| 14. DUII | Marion 90D10514422 | 2/91 | | | | | | |
| 15. | | | | | | | | |
| 16. | | | | | | | | |
| 17. | | | | | | | | |
| 18. | | | | | | | | |

☐ Additional page(s) to follow if checked




# No body: Linn DA drops manslaughter charge

**By Carrie Petersen**
**Albany Democrat-Herald**

A manslaughter charge against Frank Wade Schliske, who was named as a suspect in a homicide investigation last week, has been dismissed.

"We don't have enough evidence to proceed at this time," Linn County District Attorney Jason Carlile said.

Schliske, 38, of Albany was arrested last week after Albany police opened an investigation into whether he may have killed another man.

Investigators named a victim but there was no body. The man who was believed to be the victim turned up at the Albany Police Department and was cited on unrelated warrants.

No other victim has been named. However, detectives are still working. The initial information in the case was that Schliske had killed another man during a struggle.

"The case is not closed," Carlile said. "This is still a homicide investigation."

Schliske had not been released from the Linn County Jail as of this morning.

He was held there all last week even after the "victim" in the homicide investigation turned out to be alive.

Carlile said the victim's identity was not required for making the manslaughter charge. Legally, the evidence in a manslaughter case has to show that the suspect killed a "human being." However, from a "practical trial point of view, it's important to know who is dead," Carlile said.

Copyright © 2008  Albany Democrat Herald. A Lee Enterprises subsidiary







David
Russell
Sitton

# Man named victim may be alive

By Carrie Petersen
Albany Democrat-Herald

An Albany man who was named the victim in a homicide investigation may not be dead after all.

Earlier this week, Albany police arrested Frank Wade Schliske, 38, of Albany and charged him in the death of David Russell Sitton, 39, also of Albany.

At the time, police believed that Sitton had been killed during a struggle between the two men late last week at an Albany apartment, but no one knew where his body was.

Someone claiming to be Sitton called a detective on his cell phone Tuesday, saying he was in another city. Sitton was asked to come to the police station today so that investigators could confirm his identity and talk with him. As of this morning he hadn't shown up.

Regardless of whether Sitton is alive, the investigation continues.

Detective Sgt. Marv Hammersley said that the tip which prompted the homicide investigation was that Schliske had killed someone but no victim was identified. It was investigators who pieced together information to come up with Sitton's name.

Hammersley said police are now looking at whether Schliske killed someone else.

Schliske was arraigned Tuesday in Linn County Circuit Court on one count of first-degree manslaughter. He was still being held at the Linn County Jail this morning with security set at $175,000.

Copyright © 2008  Albany Democrat Herald, A Lee Enterprises subsidiary

.: Albany Democrat-Herald :. Archives



easy. effective. affordable.

ROLLOVER TO LEARN MORE

**FREE**
**60 DAY TRIAL**



# Democrat-Herald

Jobs Homes Cars

People | Special Sections | Life

Photos | M

Home | News | Sports | Classifieds | Entertainment

Subscribe | Contact Us | Calendar | Obituaries | Archives | Public Notices | Business Directory | Blogs | Photos | M

Saturday, Dec
Last modified Thursday, December 6, 20

## STOCKS

Enter symbol | Get Quote
Symbol Lookup
NSDQ   NYSE   S&P 500



| | | |
|---|---|---|
| NSDQ | 2706.16 | (-0.11%) |
| -2.87 | | |
| NYSE | 10023.58 | (-0.07%) |
| -6.57 | | |
| S&P 500 | 1504.66 | (-0.18%) |
| -2.68 | | |
| AMEX | 2402.01 | (-0.22%) |
| -5.39 | | |
| RUS 2K | 785.52 | (-0.18%) |
| -1.43 | | |
| Crude Oil | 88.28 | (-2.16%) |
| -1.95 | | |
| 30YR Yield | 4.57 | (+2.21%) |
| +0.10 | | |

Quotes delayed at least 20 mins.

**Market Summary**
**Market Movers**
**My Watchlist**

Click here for more

## Archives

# 'Homicide victim' alive, gets cited on warrants

A man thought to be a homicide victim went to the Albany Police Department Wedne

He was cited for outstanding warrants.

The suspect in what police still believe is a homicide investigation, Frank Wade Schliske, 38, of All at the Linn County Jail on the charge of first-degree manslaughter.

David Russell Sitton, 39, of Albany was believed to have been killed by Schliske during a fight last Albany. That changed Tuesday when he called the police on the phone.

Sitton went to the police department the following day and investigators confirmed his identity. He Linn County failure to appear warrant on a drug charge and a Lane County parole violation warran scheduled to appear today in Lane County.

The tip that prompted the homicide investigation was that Schliske had killed someone but no victi investigators say they are now looking into whether Schliske killed someone else.

*Democrat-Herald*

Subscribe now

Print this story

Email this story

**Democrat Herald Reader Comments**

The comments below are from readers of democratherald.com and in no way represent the views of the Herald or Lee Enterprises.

You must be logged in to comment.

## Search

Keyword Search:

Search

Advanced Search

*Member ID:

*Password:

12/8/0'

# DEMOCRAT HERALD.com
Your source for local news

News    Sports    Entertainment    Living    Obituaries    DH Extras    Blogs    Contact Us

>> Home    Subscriber Services  |  Vaca⁻  ⁻ Stop & Start  |  Pay Your Bill  |  Delivery Questions  ⁻  ⁻  |  Place an ad

Web Search powered by YAHOO! SEARCH

## ARCHIVES
Print this story  |  Email this story  |  Last modified: Tuesday, December 4, 2007 4:53 PM PST

# Suspect arraigned on manslaughter charge

Frank Wade Schliske was arraigned Tuesday afternoon in Linn County Circuit Court on one count of first-degree manslaughter.

Schliske, 38, of Albany is being charged in connection with the death of David Russell Sitton, 39, also from Albany.

Sitton's body has not been found and few details about the case have been released.

Investigators believe that Sitton was killed during a struggle with Schliske late Thursday or early Friday at an Albany apartment.

Schliske was being held at the Linn County Jail with security set at $175,000.

---

### 💬 DH Reader Comments

The comments below are from readers of democratherald.com and in no way represent the views of the Democrat Herald or Lee Enterprises.

*Member ID:

*Password:

Remember login?
(requires cookies)

Login

## You must be logged in to comment.

Sign Up Now

It's free and quick!

2/15/08

http://www.democratherald.com/articles/2007/12/04/news/local/6aloc01_arraign.txt

# DEMOCRAT HERALD.com
Your source for local news

News    Sports    Entertainment    Living    Obituaries    DH Extras    Blogs    Contact Us

Search | Web Search powered by YAHOO! SEARCH

## ARCHIVES

Print this story | Email this story | Last modified: Tuesday, December 4, 2007 1:33 PM PST

# Homicide probe: APD looks for body

By Carrie Petersen
Albany Democrat-Herald

Albany police say they have made an arrest in a homicide investigation but they have not yet found the victim's body.

Franklin Wade Schliske, 38, of Albany was arrested Monday at the Albany Police Department on the charge of first-degree manslaughter. He was being held at the Linn County Jail and was scheduled to be arraigned this afternoon in Linn County Circuit Court.

Few details about the investigation have been released.

Schliske is accused of killing David Russell Sitton, 39, of Albany during "some sort of struggle," Detective Sgt. Marv Hammersley said this morning.

Investigators believe that the fight occurred sometime late Thursday or early Friday at an apartment within a house in the 200 block of Sixth Avenue S.E. Police learned about it later in the day Friday when they received a tip.

Police are not saying how Sitton died. His body has not been found.

"We're exploring the leads we have at this time," Hammersley said.

Anyone with information is asked to call the Albany Police Department's detective unit at 917-7686 during business hours, or the department's main number at 917-7680 at any other time.

---

💬 **DH Reader Comments**

The comments below are from readers of democratherald.com and in no way represent the views of the Democrat Herald or Lee Enterprises.

*Member ID: [_____]

*Password: [_____]

Remember login?
(requires cookies) [ ]

Login

### You must be logged in to comment.


Sign Up Now

It's free and quick!

2/15/08

http://www.democratherald.com/articles/2007/12/04/news/local/6aaa02_homicide.txt