IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FILED '08 DEC 05 12:12 USDC-ORE

FRANK SCHLISKE,

        Plaintiff,

    v.

ALBANY POLICE DEPARTMENT; JASON
CARLILE,

        Defendants.

Case No. 6:08-cv-6098-AA

**PLAINTIFF's SECOND
MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTIONS FOR SUM-
-MARY JUDGMENT AND OPPOS-
-ING DEFENDANT CARLILE'S MO-
-TION FOR SUMMARY JUDGMENT**

### POINTS AND AUTHORITIES

Plaintiff Frank Schliske appears and provides full text of a very recent Supreme Court of Oregon Opinion car--ving out exceptions to the Oregon "Tort Claims" Act in cases where an individual is denied a remedy under Article 1 Section 10 of the Constitution of Oregon ("the remedy clause" which protects person, property and reputation).

Clarke v OHSU clearly rules that ORS Section 30.265 cannot "shield" a public employee from liability when a common law "remedy" had been available at com--mon law. As the Supreme Court of the US in Fitzsimmons v Buckley, 509 US 259 makes clear, there was no com--mon law immunity for prosecutors out of court statements to the press. Mr. Carlile is not shielded from liability under the Oregon Tort Claims law for his defamatory out of court statements against Mr. Schliske.

Respectfully Submitted December 04 2008

Frank Schliske
1015 Queen Street SE
Albany OR 97330

**FILED:** December 28, 2007

IN THE SUPREME COURT OF THE STATE OF OREGON

JORDAAN MICHAEL CLARKE,
a minor,
by his guardian ad litem,
Sari Clarke,

Respondent on Review,

v.

OREGON HEALTH SCIENCES UNIVERSITY,
a public corporation;
MUSTAFA ADNAN COBANOGLU, M.D.; JOHN DAVID BLIZZARD, M.D.;
SANJEEV K. SHARMA, M.D.; STEVEN A. FIAMENGO, M.D.;
BETSY E. SOIFER, M.D.; JENNIFER STEWART, R.R.T.,
and ANA WILSON, R.N.,

Petitioners on Review,

and

VEERAPPA K. M. REDDY, M.D.,

Defendant,

and

STATE OF OREGON,

Intervenor on Review.

(CC 0005-05116; CA A124560; SC S053868)

On review from the Court of Appeals.*

Argued and submitted January 9, 2007.

William F. Gary, Harrang Long Gary Rudnick PC, argued the cause for petitioners on review. With him on the briefs were Sharon A. Rudnick, Jerome Lidz, and Susan D. Marmaduke, Portland.

Kathryn H. Clarke, argued the cause for respondent on review. With her on the briefs were William A. Gaylord, Linda K. Eyerman, Todd A. Bradley, and Gaylord Eyerman Bradley, P.C., Portland.

Janet A. Metcalf, Assistant Attorney General, filed a brief on behalf of intervenor on review, State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, Salem.

Roy Pulvers, Lindsay, Hart, Neil & Weigler, LLP, Portland, filed briefs on behalf of *amicus curiae* Port of Portland.

Janet A. Metcalf, Assistant Attorney General, filed a brief in support of petition for review on behalf of *amicus curiae* State of Oregon.

Thomas E. Cooney, Paul A. Cooney, and David J. Madigan, filed a brief in support of petition for review on behalf of *amicus curiae* Oregon Medical Association.

David C. Landis, Portland, filed a brief on behalf of *amicus curiae* Oregon Medical Association.

Linda Meng, Harry Auerbach, Paul Snider, Agnes Sowle, Dori M. Brattain, Mark B. Comstock, James M. Brown, and Ronald W. Downs, filed briefs on behalf of *amici curiae* League of Oregon Cities, Association of Oregon Counties, Multnomah County, Oregon School Boards Association, Oregon Small Schools Association, Oregon Association of School Business Officials, Inc., Confederation of Oregon School Administrators, and Special Districts Association of Oregon.

Mark S. Rauch, Salem, filed a brief on behalf of *amicus curiae* City County Insurance Services.

Robyn E. Ridler, Barbee B.Lyon, Tonkon Torp LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Business Association.

Maureen Leonard, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Lawrence Wobbrock, Portland, and Jeffrey R. White, Washington D.C., filed a brief on behalf of *amicus curiae* American Association for Justice.

Before De Muniz, Chief Justice, Gillette, Durham, Balmer, Kistler and Walters, Justices.**

DE MUNIZ, C. J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings.

Balmer, J., concurred and filed an opinion in which Kistler, J., joined.

*Appeal from Multnomah County Circuit Court, Henry Kantor, Judge. 206 Or App 610, 138 P3d 900 (2006).

**Linder, J., did not participate in the consideration or decision of this case.

DE MUNIZ, C. J.

In this case, we address whether the Oregon Tort Claims Act (OTCA), specifically ORS 30.265(1) and ORS 30.270(1), as applied to this case, violates the Remedy Clause of Article I, section 10, of the Oregon Constitution. ORS 30.265(1) provides, in part:

> "The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 *shall be an action against the public body only*. The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action or suit against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action or suit. No other form of civil action or suit shall be permitted. *If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant.*"

ORS 30.265(1) (emphasis added). ORS 30.270(1), in turn, limits the damages recoverable against any public body to:

> "(a) $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.
>
> "(b) $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence unless those damages exceed $100,000, in which case the claimant may recover additional special damages, *but in no event shall the total award of special damages exceed $100,000.*
>
> "(c) $500,000 for any number of claims arising out of a single accident or occurrence."

ORS 30.270(1) (emphasis added). Article I, section 10, of the Oregon Constitution states:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

In the recent case of *Jensen v. Whitlow*, 334 Or 412, 51 P3d 599 (2002), this court rejected a facial challenge to ORS 30.265(1) under Article I, section 10, *id.* at 421, but declined to decide an "as-applied" challenge, *id.* at 415-16. We now address such an "as-applied" challenge and hold that the application of ORS 30.265(1) and ORS 30.270(1) in this case violates Article I, section 10.

## I. BACKGROUND AND PROCEDURAL HISTORY

We take the following facts from the pleadings. Because the trial court granted judgment

on the pleadings pursuant to ORCP 21 B, [1] this court assumes the facts in the pleadings to be true. *Sager v. McClendon*, 296 Or 33, 35, 672 P2d 697 (1983).

Plaintiff Jordaan Clarke was born in February 1998 at Oregon Health and Science University (OHSU) with a congenital heart defect. He was admitted to OHSU in May 1998 for the surgical repair of that condition. Following surgery, plaintiff was placed in a surgical intensive care unit. While in that unit, plaintiff suffered prolonged oxygen deprivation causing him permanent brain damage.

Plaintiff's brain damage was a direct result of the negligence of OHSU and certain of its employees and agents. Plaintiff is totally and permanently disabled. His expenses for total life and health care will amount to $11,073,506, the loss of his future earning capacity is $1,200,000, and his noneconomic damages are $5,000,000.

In 2001, plaintiff brought this action against OHSU and against the individuals who treated him. [2] Pursuant to ORS 30.265(1), defendants moved to substitute OHSU as the sole defendant in the action. The trial court granted the motion, and plaintiff filed a second amended complaint naming only OHSU as defendant. In its answer, OHSU admitted that it was negligent in one or more of the ways alleged by plaintiff and that its negligence resulted in permanent injury to plaintiff. OHSU also admitted that "plaintiff sustained economic and noneconomic damages in excess of the monetary limitations of the Oregon Tort Claims Act as a result of the injuries caused by the negligence of OHSU."

OHSU moved for judgment on the pleadings pursuant to ORCP 21 B, contending that the trial court should enter judgment in favor of plaintiff and against OHSU in the amount of $200,000, OHSU's maximum liability under ORS 30.270(1). The trial court granted OHSU's motion and entered judgment against OHSU in the amount of $200,000.

Plaintiff appealed, challenging the substitution of OHSU for the individual defendants and arguing that the trial court's entry of judgment in the amount of $200,000 denied him the right to a remedy in violation of Article I, section 10, of the Oregon Constitution, as well as the right to a jury trial under Article I, section 17. [3] The Court of Appeals rejected plaintiff's Article I, section 10, argument as to his claim against OHSU because, it concluded, OHSU would have been immune from liability at common law. *Clarke v. OHSU*, 206 Or App 610, 615-22, 138 P3d 900 (2006). That court, for the same reason, rejected plaintiff's Article I, section 17, argument as to OHSU. *Id.* at 622-23.

The Court of Appeals, however, accepted plaintiff's Article I, section 10, argument with respect to the substitution of OHSU as the sole defendant under ORS 30.265(1). *Id.* at 623-34. Plaintiff argued that, because, at common law in 1857, he would have had a cause of action against the employees of OHSU, Article I, section 10, permits the legislature to abolish that remedy only if it provides an adequate substitute remedy. *Id.* at 623-24. Plaintiff further argued that, because the limited recovery against OHSU was not an adequate substitute remedy in this case, ORS 30.265(1) violated Article I, section 10. *Id.* at 624. The court agreed that the OTCA did not provide a constitutionally adequate remedy in this case, explaining that "recovery of less than two percent of one's economic damages -- particularly given the nature of the injuries alleged -- is a remedy 'incapable of restoring the right that has been injured.'" *Id.* at 626 (quoting *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 119-20, 23 P3d 333 (2001)). The court concluded that, as

applied to this case, ORS 30.265(1) violated Article I, section 10. *Clarke*, 206 Or App at 633. The court reversed the trial court's judgment and remanded with instructions to reinstate the claims against the individual defendants. [(4)] *Id.* at 634.

Defendants sought review in this court, challenging the Court of Appeals' conclusion that in this case the OTCA does not provide a constitutionally adequate substitute remedy as required under Article I, section 10. For his part, plaintiff also challenges the Court of Appeals' conclusion regarding his Article I, section 10, claims against OHSU; specifically, plaintiff takes issue with the Court of Appeals' conclusion that OHSU would have been entitled to sovereign immunity at common law. We allowed review to address the important issues concerning the adequacy of the OTCA remedy under Article I, section 10. [(5)]

## II. DISCUSSION

As noted earlier, the primary issue in this case is whether ORS 30.265(1) and ORS 30.270(1), as applied to facts of this case, violate Article I, section 10. We begin with an overview of the OTCA, then turn to an overview of Article I, section 10, and then analyze the issue at hand.

A. *Overview of the OTCA*

Before 1967, public bodies were immune from tort liability. *Smith v. Pernoll*, 291 Or 67, 69, 628 P2d 729 (1981). A person injured by the negligence of a public employee acting within the scope of his or her employment could pursue an action against the employee, but not against the public employer. *See Krieger v. Just*, 319 Or 328, 331-32, 876 P2d 754 (1994) (citing *Ogle v. Billick*, 253 Or 92, 453 P2d 677 (1969)). In 1967, the legislature enacted the OTCA, which partially waived immunity for public bodies. *Jensen*, 334 Or at 416-17. The 1967 version of the OTCA included a monetary limitation on the state's liability, Or Laws 1967, ch 627, § 4, but did not alter the liability of public officers, employees, or agents. *Jensen*, 334 Or at 417. Those individuals, therefore, remained personally liable for torts committed within the course and scope of their employment. *Id.*

In 1975, the legislature amended the OTCA. The 1975 version required that public bodies indemnify officers, employees, and agents against tort claims "arising out of an alleged act or omission occurring in the performance of duty." *Jensen*, 334 Or at 417 (internal quotation marks and citations omitted); Or Laws 1975, ch 609, § 16(1). Additionally, the legislature extended the limitation on damages to claims against officers, employees, and agents of all public bodies. *Jensen*, 334 Or at 417; Or Laws 1975, ch 609, § 13.

In 1991, the legislature again revised the OTCA. Or Laws 1991, ch 861, § 1. That revision added language to ORS 30.265(1) that eliminated entirely any claim against any officer, employee, or agent for their work-related torts. *Jensen*, 334 Or at 417. Pursuant to the 1991 amendments, the sole cause of action available for torts committed by public officers, employees, or agents is an action against the public body. Or Laws 1991, ch 861, § 1. After that amendment, ORS 30.265(1) now requires that, if an action is filed against a public officer, employee, or agent, the public body "shall be substituted as the only defendant." That substituted claim against the public body is subject to the OTCA's damages limitations. ORS 30.265(1); ORS 30.270(1); *Jensen*, 334 Or at 417. The 1991

amendments were added at the request of the state, which asserted three reasons for the requested change. Testimony, House Judiciary Committee, HB 3520, May 13, 1991, Ex E (statement of Jack Landau, Deputy Attorney General). First, because the law provided indemnification for state officers, naming the officers as parties "serve[d] no purpose." *Id.* Second, some claimants had argued that the limitation on the liability of the state did not apply to the liability of individuals; therefore, the state sought to "plug that loophole." *Id.* Finally, the state noted that "a lot of resources were spent" litigating which state officials are properly named in any given lawsuit. *Id.* Here, as in *Jensen*, the 1991 revision frames the issues in this case.

B. *Overview of Article I, section 10*

We begin our overview by again quoting the text of Article I, section 10:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and *every man shall have remedy by due course of law for injury done him in his person, property, or reputation.*"

(Emphasis added.) In *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992), this court set forth a methodology for interpreting provisions of the Oregon Constitution. That methodology requires an examination of the text of the provision, the history of the provision, and the case law concerning the provision. *Id.* This court applied that methodology to the second clause of Article I, section 10, in *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001).

In *Smothers*, the court first examined the text of Article I, section 10. *Smothers*, 332 Or at 91-94. The court noted that the second clause of Article I, section 10, by using the word "shall," affirmatively mandated that a remedy by due course of law be available in the event of injury to rights respecting person, property, and reputation. *Id.* at 91. The court also noted that contemporaneous dictionaries indicated that "remedy" referred "both to a process through which a person may seek redress for injury and to what is required to restore a person who has been injured." *Id.* at 92. However, the court concluded that "no definitive picture of the scope or effect of the remedy clause emerges" from examining only the text of the clause. *Id.* at 94.

The court then turned to the historical circumstances of the provision. *Id.* The Remedy Clause, the court explained, can be traced to Edward Coke's commentary on the second sentence of Chapter 29 of the Magna Carta of 1225. *Id.* The translation of Chapter 29 provides:

> "No freeman shall be taken, or imprisoned, or be disseised of his freehold, or liberties, or free customs, or be outlawed, or exiled, or any otherwise destroyed; nor will we not pass upon him, nor condemn him, but by lawful judgment of his peers, or by the law of the land. We will sell to no man, we will not deny or defer to any man either justice or right."

*Id.* at 95 (quoting Edward Coke, *The Second Part of the Institutes of the Laws of England*, 45 (1797)) (internal quotation marks omitted). According to Coke's commentary on that chapter, the second sentence evolved to a guarantee that every

subject had a remedy by ᵢᵤₑ course of law for injury to goods, land, ᵤₗ person. *Smothers*, 332 Or at 96-97. That guarantee made its way to the American colonies through, among other things, Coke's commentary on the English common law. *Id.* at 103-04. The court summarized the results of its historical inquiry:

> "In sum, when the Oregon Constitutional Convention convened in 1857, courts and commentators had provided considerable insight into the background and meaning of remedy clauses in state declarations or bills of rights. Those cases and commentaries revealed that the purpose of remedy clauses was to protect 'absolute' common-law rights. For injuries to those rights, the remedial side of the common law had provided causes of action that were intended to restore right or justice. Remedy clauses mandated the continued availability of remedy for injury to absolute rights."

*Id.* at 112.

Finally, the court examined the case law surrounding Article I, section 10. *Id.* at 115-124. Early cases, *Smothers* explained, held that "the purpose of the remedy clause is to save from legislative abolishment those jural rights which had become well established prior to the enactment of our Constitution." *Id.* at 116 (internal quotation marks and citation omitted). This court's jurisprudence changed course, however, following a United State Supreme Court decision that upheld a guest passenger statute facing an Equal Protection Clause challenge. *Id.* at 116-17 (discussing *Silver v. Silver*, 280 US 117, 50 S Ct 57, 74 L Ed 221 (1929)). Thereafter, this court relied on *Silver* to hold that the Remedy Clause does not prohibit the legislature from abolishing common-law rights that existed when the Oregon Constitution was drafted. *Smothers*, 332 Or at 117 (discussing *Perozzi v. Ganiere*, 149 Or 330, 345, 40 P2d 1009 (1935)). This court followed *Silver* and *Perozzi* in subsequent decisions. *Smothers*, 332 Or at 117-19. In *Smothers*, however, this court disavowed the line of cases beginning with *Perozzi*. It do so because of *Perozzi*'s erroneous reliance on *Silver*'s interpretation of the Equal Protection Clause in deciding a Remedy Clause claim, to the extent that those cases held that the legislature could abolish absolute rights respecting person, property, or reputation without violating the Remedy Clause. *Id.* at 118-19.

Instead, *Smothers* cited with approval cases predating *Perozzi*. *Id.* at 119. Those cases included *Mattson v. Astoria*, 39 Or 577, 580, 65 P 1066 (1901), which held that

> "[the Remedy Clause] was intended to preserve the common-law right of action for injury to person or property, and while the legislature may change the remedy or the form of procedure, attach conditions precedent to its exercise, and perhaps abolish old and substitute new remedies, * * * it cannot deny a remedy entirely."

(internal citations omitted), and *Batdorff v. Oregon City*, 53 Or 402, 408-09, 100 P 937 (1909), which held unconstitutional a city ordinance that took away a remedy from those injured by negligent failure to maintain the city streets. *Smothers* also looked to an early federal court opinion written by Judge Matthew Deady, who had been president of the Oregon Constitutional Convention in 1857, that explained the meaning of the Remedy Clause as follows:

> "[T]he remedy guaranteed by [Article I, section 10] is not intended for the
> redress of any novel, indefinite, or remote injury that was not then regarded
> as within the pale of legal redress. But whatever injury the law, as it then
> stood, took cognizance of and furnished a remedy for, every man shall
> continue to have a remedy for by due course of law. * * * If [a] then known
> and accustomed remedy can be taken away in the face of this constitutional
> provision, what other may not? Can the legislature, in some spasm of novel
> opinion, take away every man's remedy for slander, assault and battery, or
> the recovery of a debt?"

*Eastman v. County of Clackamas*, 32 F 24, 32 (D Or 1887). Based on those, and other
early cases, *Smothers* concluded that (1) the Remedy Clause mandates that remedy by
due course of law shall be available to every person in the event of injury; (2) "remedy"
includes both the remedial process as well as what is required to restore a right that has
been injured; and (3) "injury" is a wrong or harm for which a cause of action existed
when the drafters wrote the Oregon Constitution in 1857. *Smothers*, 332 Or at 124.

After reviewing the text, history, and case law as outlined above, the court in *Smothers*
set forth the following analysis to be applied to Remedy Clause claims:

> "[T]he first question is whether the plaintiff has alleged an injury to one of
> the absolute rights that Article I, section 10 protects. Stated differently, when
> the drafters wrote the Oregon Constitution in 1857, did the common law of
> Oregon recognize a cause of action for the alleged injury? If the answer to
> that question is yes, and if the legislature has abolished the common-law
> cause of action for injury to rights that are protected by the remedy clause,
> then the second question is whether it has provided a constitutionally
> adequate substitute remedy for the common-law cause of action for that
> injury."

*Id.* at 124. We now apply the *Smothers* analysis to plaintiff's arguments under Article I,
section 10.

### C. *Plaintiff's claim against OHSU*

Under *Smothers*, the first issue we must address is whether the common law would have
recognized plaintiff's negligence claim against OHSU. OHSU contends that plaintiff
would not have had a claim against it, because OHSU would have been entitled to
sovereign immunity under the common law of Oregon. If OHSU would have been
entitled to sovereign immunity at common law, then the OTCA's limitation of a claim
against OHSU would not violate Article I, section 10, because the common law would
not have recognized a cause of action against OHSU for the injury alleged. *See Hale v.
Port of Portland*, 308 Or 508, 518, 783 P2d 506 (1989) (holding that a statute that
abolishes or limits a claim against a public entity does not violate Article I, section 10).
We conclude that OHSU would have been entitled to sovereign immunity at common law
because, among other reasons, OHSU is a state-created entity that performs functions
traditionally performed by the state.

As previously noted, the Court of Appeals concluded that OHSU would have been
immune from liability at common law and therefore rejected plaintiff's Article I, section

10, argument regarding OHSU. *Clarke*, 206 Or App at 622. The court reasoned that "a plaintiff's remedies against a public body created by the state to perform functions on behalf of the state would have been understood by the drafters [of the Oregon Constitution] to have been entirely dependent on the will of the legislature." *Id.* at 618. The Court of Appeals concluded that OHSU was such a public body because, according to the text of the statute creating it, OHSU is a state-created public corporation, which performs governmental functions. *Id.* at 621-22. The court therefore held that, because plaintiff would have had no absolute right to a common-law action against OHSU, plaintiff's claim against OHSU was not protected by Article I, section 10. *Id.* at 622. We now address plaintiff's challenge to that conclusion.

"Our Constitution is framed on the premise that the state is immune from suit * * *." *Vendrell v. School District No. 26C et al*, 226 Or 263, 278, 360 P2d 282 (1961). That premise is embodied in Article IV, section 24, of the Oregon Constitution, which provides in relevant part, "Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution[.]" Because the doctrine of sovereign immunity is implicit in the Constitution, this court may not abolish the doctrine; instead, the doctrine may only be waived or altered by the legislature pursuant to a general law. *Vendrell*, 226 Or at 278-79. Although the doctrine is constitutionally protected, this court interprets the doctrine of sovereign immunity "within the narrowest possible bounds consistent with the constitutional provision." *State v. Shinkle*, 231 Or 528, 539, 373 P2d 674 (1962). With those principles in mind, we now analyze whether OHSU would have enjoyed sovereign immunity at common law.

Article IV, section 24, presumes that the "State" is immune from liability, but does not specify what entities are encompassed by that term. This court has said that, in addition to the state itself and its agencies, entities that are "instrumentalities" of the state enjoy full immunity from suit. *Hale*, 308 Or at 518. An instrumentality of the state "perform[s] state functions," *id.* at 518. *See also James & Yost v. Board of Higher Edu.*, 216 Or 598, 600, 340 P2d 577 (1959) (an instrument of the state is "charged with carrying out one of the functions of government"). [6] Additionally, an instrumentality of the state "has such powers and duties only as the state entrusts to [it] and these powers and duties are set forth by statutory enactment." *James & Yost*, 216 Or at 600-01.

Our previous cases provide some guidance as to what constitutes an instrumentality of the state. In *Hale*, this court concluded that the Port of Portland was an instrumentality of the state entitled to immunity from civil liability. *Hale*, 308 Or at 517-518. The court noted that the Port was created by the legislature to "have full control of [the Willamette and Columbia Rivers] at [Portland, East Portland and Albina], and between said cities and the sea, so far and to the full extent that this State can grant the same." *Id.* at 517 (internal quotation marks and citation omitted). Although the Port's functions had expanded since its creation to include serving the greater Pacific Northwest, the court concluded that the Port remained an instrumentality of the state because the Port continued to promote the shipping and maritime interests of the Portland area. *Id.* at 518.

This court also has used the term "instrument[s] * * * of the state" in a case which determined that the State Board of Higher Education enjoyed sovereign immunity. *James & Yost*, 216 Or at 600-01. Noting that the State Board of Education was "not a separate and distinct entity" from the state, the court also described it as "an *instrument or arm of*

*the state*, charged with carrying out one of the functions of government, to-wit, the education of the peoples of the state." *Id.* at 600 (emphasis added). The court explained that the State Board of Higher Education had only those powers and duties as outlined by the legislature. *Id.* at 600-01. The court concluded that "[t]here can be little question but that the action is one against the state." *Id.* at 600.

This court has also illuminated the concept of an instrument of state government in the context of a challenge to the creation of public corporations under Article XI, section 2, of the Oregon Constitution, which provides that "[c]orporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws." In *State ex rel Eckles v. Woolley*, 302 Or 37, 726 P2d 918 (1986), the court evaluated whether the legislature's creation of the State Accident Insurance Fund Corporation violated Article XI, section 2. The court explained that Article XI, section 2,

> "allows the creation of a corporation for a public purpose, 'whose members are citizens, not stockholders; an *instrument of the government* with certain delegated powers, subject to the control of the legislature, and its members officers or agents of the government for the administration or discharge of public duties.'"

*Woolley*, 302 Or at 47 (quoting *Cook v. The Port of Portland*, 20 Or 580, 583, 27 P 264 (1891) (emphasis added)). The court concluded that SAIF Corporation's "exclusively governmental management and the absence of private investment or objective to operate for private profit" excluded it from the prohibition of Article XI, section 2. *Woolley*, 302 Or at 49. [7]

From those cases, we glean certain attributes generally possessed by instrumentalities of the state. An instrumentality of the state performs a function traditionally performed by the state. Additionally, the state generally outlines the powers and duties of its instrumentalities, either via statutory enactment or some other method. An instrumentality of the state is subject, at least in part, to the control of the state in some way.

We now examine whether OHSU is an instrumentality of the state and would have, therefore, been immune at common law. Plaintiff concedes that, prior to 1995, OHSU was an instrumentality of the state, but asserts that since 1995, when the legislature recreated OHSU as a public corporation, OHSU no longer is an instrumentality of the state. On the limited record before us in this proceeding we disagree with plaintiff's contention.

Prior to 1995, OHSU was part of the Oregon State System of Higher Education. Since 1995, OHSU has been a "public corporation" under ORS 353.020; that term is defined as

> "an entity that is created by the state to carry out public missions and services. In order to carry out these public missions and services, a public corporation participates in activities or provides services that are also provided by private enterprise. A public corporation is granted increased operating flexibility in order to best ensure its success, while retaining principles of public accountability and fundamental public policy. The board of directors of a public corporation is appointed by the Governor and

confirmed by the Senate but is otherwise delegated the authority to set policy
and manage the operations of the public corporation."

ORS 353.010(2). The legislature also decreed that OHSU "shall be a governmental entity
performing governmental functions and exercising governmental powers" and "shall be
an independent public corporation with statewide purposes and missions." ORS 353.020.
Thus, the statute explicitly states that OHSU shares the first attribute of an
instrumentality of the state -- performing functions or providing services that the
government has traditionally performed or provided.

The legislature also stated, however, that OHSU "shall not be considered a unit of local
or municipal government or a state agency for purposes of state statutes or constitutional
provisions." ORS 353.020. In our view, this statement does not alter our conclusion that
OHSU would have been considered immune at common law. Whether OHSU is to be
considered a "unit of local or municipal government" or a "state agency" is not the end of
inquiry for determining if OHSU would have enjoyed immunity at common law. An
entity can be an "instrumentality of the state" even if it is neither a unit of municipal
government or a state agency. To make the determination of whether OHSU is an
instrumentality of the state, we must examine the entire context of the statutes creating
OHSU as a public corporation. That statutory context, as examined below, demonstrates
that OHSU is an instrumentality of the state that would have been entitled to immunity at
common law. [8]

In those statutes, the legislature specified some of OHSU's public services and functions,
in describing the missions and purposes of OHSU. Specifically:

> "(1) It shall be the public policy of the Oregon Health and Science University
> in carrying out its missions as a public corporation:

> "(a) To serve the people of the State of Oregon by providing education in
> health, science, engineering and their management for students of the state
> and region.

> "* * * * *

> "(3) The university is designated to carry out the following public purposes
> and missions on behalf of the State of Oregon:

> "(a) Provide high quality educational programs appropriate for a health and
> science university;

> "(b) Conduct research in health care, engineering, biomedical sciences and
> general sciences;

> "(c) Engage in the provision of inpatient and outpatient clinical care and
> health care delivery systems throughout the state;

> "(d) Provide outreach programs in education, research and health care;

> "(e) Serve as a local, regional and statewide resource for health care

providers; and

"(f) Continue a commitment to provide health care to the underserved patient
population of Oregon.

"(4) The university shall carry out the public purposes and missions of this
section in the manner that, in the determination of the Oregon Health and
Science University Board of Directors, best promotes the public welfare of
the people of the State of Oregon."

ORS 353.030. OHSU's purposes, therefore, include "promot[ing] the public welfare of
the people of the State of Oregon[,]" in part through providing education and health care
to the people of the State. ORS 353.030(4). Without question, the particular combination
of education and health care in the form of a research and teaching hospital is
traditionally a function performed by the state, at least for the last century. *See, e.g.,*
*James & Yost*, 216 Or at 600 (one of the functions of the state government is "the
education of the peoples of the state"). OHSU's functions, as outlined by statute,
demonstrate that it possesses the first attribute of an instrumentality of the state.

OHSU also possesses the second attribute of an instrumentality of the state. In *James &
Yost*, this court described an instrument of the state as possessing those powers "as the
state entrusts to [it]." *Id.* at 600. In ORS 353.050, the legislature outlined more than 20
"[p]owers and duties of board and university officials," including setting policies for the
university, entering into contracts, including partnerships and joint ventures, entering into
real estate transactions, suing and being sued in its own name, investing funds, borrowing
funds, and developing academic programs. The legislature also granted to the board or
OHSU the power to "[p]erform any other acts that in the judgment of the board or
university are requisite, necessary or appropriate in accomplishing the purposes described
in or carrying out the powers granted by this chapter." ORS 353.050(25). This list of
powers outlined by the legislature, though broad, suggests that OHSU is an
instrumentality of the state.

The governance structure of OHSU also is an important indicator that OHSU is an
instrumentality of the state. OHSU's board of directors consists of 10 members who,
except for OHSU's president, are appointed by the Governor and confirmed by the
Senate. ORS 353.040(1). Except for OHSU's president and a student member of the
board of directors, each member serves a four-year term. ORS 353.040(2). The Governor
has the authority to remove any board member for cause, after notice and public hearing.
ORS 353.040(7). The board is charged with "exercis[ing] all the powers of the Oregon
Health and Sciences University" and "govern[ing] the university." ORS 353.050. In
carrying out those powers, "the university shall be a governmental entity performing
governmental functions and exercising governmental powers." *Id.*

Based on the entirety of the statutes discussed above, we conclude that OHSU is an
instrumentality of the state performing state functions. We therefore agree with the Court
of Appeals' conclusion that OHSU would have been entitled to immunity at common law.
When an entity would have been immune from liability at common law, the legislature's
choice to limit that entity's liability does not violate Article I, section 10. *Hale*, 308 Or at
518. Therefore, the OTCA's damages limitation, as applied to plaintiff's claim against
OHSU, does not violate Article I, section 10. [9]

D. *Plaintiff's claim against the individual defendants*

Having concluded that the common law in Oregon in 1857 would not have recognized a cause of action for negligence against OHSU, we now address whether the OTCA's elimination of a cause of action against the individual defendants, combined with its damages limitation, survives scrutiny under Article I, section 10. As we noted earlier, the Oregon Constitution guarantees that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Or Const, Art I, § 10.

On review, defendants offer several arguments supporting their assertion that the Court of Appeals erred in holding that the application of the OTCA in this case violated the remedy clause. First, defendants contend that Article I, section 10, guarantees only that a remedy of some kind be available, not that the remedy be of any certain type or amount. Therefore, in defendants' view, because plaintiff here has a remedy available to him in the form of an action against OHSU, there is no Article I, section 10, infirmity. Second, defendants assert that the Court of Appeals erred in comparing the amount of damages available under the OTCA to the amount of damages claimed by plaintiff. Defendants argue that "substantial," as that term had been used in this court's Remedy Clause jurisprudence, does not call for such a comparison; instead, defendants contend that "substantial" refers to the remedial *process* or, at the very most, that a substitute remedy need only be one that is not illusory or the practical equivalent of no remedy at all. [10]

From the foregoing, the state contends that the court should review a legislatively substituted remedy on a categorical basis only. Put another way, the state suggests that the determination of whether a substitute remedy is adequate should not focus on the facts of an individual case, but instead should focus on the balance struck by the legislature in creating a substitute remedy. The state asserts that, unless a category of potential plaintiffs is left without a remedy, the legislative policy choice is conclusive. On the other hand, plaintiff contends that the Remedy Clause protects both the procedure for seeking redress as well as the substance of that redress. Plaintiff argues further that, when the legislature abolishes a common-law remedy, it must provide a remedy that is "substantially equivalent" to the common-law remedy.

This court has addressed Article I, section 10, challenges to the OTCA on three prior occasions. In *Hale*, this court rejected an Article I, section 10, challenge to the OTCA as applied to an action brought against the City of Portland (City) and the Port of Portland (Port). *Hale*, 308 Or at 517-24. The plaintiff in that case suffered injuries stemming from an alleged failure of the City and the Port to maintain a road. *Id.* at 511. The plaintiff's medical expenses totaled more than $600,000; however, upon motion by the City and Port, the trial court struck the plaintiff's claim for damages in excess of the $100,000 damages limitation in effect at the time and entered judgment against the City and the Port for $100,000. *Id.* On review, the plaintiff challenged the constitutionality of that damages limitation. *Id.*

The court in *Hale* first concluded that the Port would have been immune from liability at common law; therefore, the damages limitation did not "deny plaintiff any right he ha[d] against the Port by virtue of the guarantee in Oregon Constitution Article I, section 10, because there never was such a right." *Id.* at 518. The court reached a different conclusion regarding the City, and therefore went on to analyze the damages limitation as to the plaintiff's claim against the City. *Id.* at 521-24. The court explained that Article I,

section 10, permits the legislature to alter a common-law remedy, ' so long as the party injured is not left entirely without a remedy. * * * [T]he remedy need not be precisely of the same type or extent; it is enough that the remedy is a *substantial one*." *Id.* at 523 (emphasis added). In upholding the OTCA's damages limitation, *Hale* emphasized that the legislature had struck a new balance between municipal corporations and potential plaintiffs. *Id.* The court concluded that the remedy available to plaintiff was "substantial" because, although the OTCA reduced the size of the potential recovery, it also expanded the class of plaintiffs that could recover by not requiring a plaintiff to demonstrate that the municipal corporation was engaged in a proprietary activity when it injured that plaintiff. *Id.* The court described that *quid pro quo* as follows:

> "A benefit has been conferred, but a counterbalancing burden has been
> imposed. This may work to the disadvantage of some, while it will work to
> the advantage of others. But all who had a remedy continue to have one. This
> may not be what plaintiff wants. It may not even be what this court, if it were
> in the business of making substantive law on this subject, would choose to
> enact. But it is within the legislature's authority to enact in spite of the
> limitations of the Oregon Constitution, Article I, section 10."

*Id.* at 523. Justice Linde concurred separately, asserting that "the court has allowed legislative immunization of cities from tort liability only on condition that the individuals who are personally responsible for harm qualifying as a legal injury remain liable." *Id.* at 530. Because *Hale* included no claim against individual public officers, Justice Linde agreed with the court's conclusion. *Id.*

The court next addressed the OTCA's constitutionality under Article I, section 10, in *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994). In that case, the plaintiff's adult daughter was struck and killed by a bus operated by Tri-County Metropolitan Transportation District of Oregon (TriMet). *Id.* at 420. The plaintiff brought a wrongful death action against TriMet and the bus driver. *Id.* at 420-21. The defendants moved for judgment on the pleadings, arguing that they were immune from liability under ORS 30.265(3)(a), [11] because the decedent was covered by the workers' compensation law at the time of her death. *Id.* at 421. The trial court granted the defendants' motion. *Id.* The Court of Appeals affirmed. *Id.* at 421-22. On review, the plaintiff argued that the $3,000 burial benefit available to a decedent's estate under the workers' compensation scheme, if it is the only remedy available for wrongful death at the hands of a public employee, is a denial of a "substantial" remedy, in violation of Article I, section 10. *Id.* at 422. The court agreed, explaining that ORS 30.265(3)(a) denied the decedent's surviving parents a remedy that they would have been entitled to under the wrongful death statutes. *Id.* at 426-27. The court emphasized that ORS 30.265(3)(a) abolished the parents' remedy against both the municipality and the allegedly negligent employees of the municipality. *Id.* at 428. Therefore, the court concluded that ORS 30.265(3)(a) violated Article I, section 10. *Id.* [12]

Most recently, in *Jensen*, 334 Or at 417-21, this court addressed whether ORS 30.265(1), on its face, violated Article I, section 10. *Jensen* was a case involving certified questions from the United States District Court for the District of Oregon. *Id.* at 415. The plaintiff in that case alleged that a foster parent abused her daughter while she was in the custody of the Children Services Division of the State of Oregon (CSD). *Id.* at 416. The plaintiff alleged that individual agents and employees of CSD were negligent. *Id.* The individual

defendants moved to strike and dismiss the claims against them and to substitute the state as the sole defendant pursuant to ORS 30.265(1). *Id.* While that motion was pending, the plaintiff moved the district court to certify questions to this court as to the constitutionality of ORS 30.265(1). *Id.* This court declined to consider any of the certified questions presented as "as-applied" challenges to ORS 30.265(1); instead, the court considered only facial challenges to that statute. *Id.* at 415-16. Addressing the facial challenge under Article I, section 10, this court applied the two-step analysis governing Article I, section 10, claims set forth in *Smothers*, 332 Or at 124:

> "[O]ur first step is to determine whether the injury that plaintiff has alleged is one for which the remedy clause guarantees a remedy. If we answer that question affirmatively, and if the legislature has abolished that common-law claim, then our second step is to determine whether the legislature has provided a constitutionally adequate substitute remedy for that abolished common-law claim."

*Jensen*, 334 Or at 418 (internal citation omitted). The court assumed, without deciding, that the injury alleged was one for which Article I, section 10, guarantees a remedy. *Id.* The court then analyzed whether ORS 30.265(1), which required the plaintiff to bring an action against the public body alone, provided a constitutionally adequate substitute remedy. *Id.* at 418-21. The court concluded that the OTCA was capable of constitutional application. *Id.* at 421. The court reasoned:

> "Because the damages 'cap' is not implicated in every case, and because a damages award has yet to be determined in this case, the damages 'cap' does not render the remedy available to plaintiff 'incapable of restoring the right that has been injured.'"

*Id.* at 421 (quoting *Smothers*, 332 Or at 119-20). This court therefore held that ORS 30.265(1) does not, on its face, violate Article I, section 10. *Jensen*, 334 Or at 421.

Article I, section 10, cases outside of the OTCA context also provide guidance. For example, in *Greist v. Phillips*, 322 Or 281, 291, 906 P2d 789 (1995), this court held a statutory substitute remedy to be "substantial." In that case, the court reviewed the application of the damages limitation set forth in ORS 18.560 [13] to a wrongful death claim. *Id.* at 284. [14] Following a trial, the jury awarded economic damages of $100,000 and noneconomic damages of $1.5 million to the decedent's personal representative. *Id.* at 286. Pursuant to ORS 18.560, the trial court reduced the noneconomic damages to $500,000. *Id.* On review, the plaintiff argued that, among other things, the trial court's application of ORS 18.560 to reduce her noneconomic damages award violated Article I, section 10. *Id.* at 290. The court rejected that argument, citing *Hale* and *Neher* for the proposition that Article I, section 10, is not violated so long as the party injured is not left without a substantial remedy. *Id.* at 290-91. The court concluded that the $600,000 total remedy that plaintiff received under ORS 18.560 was "substantial," emphasizing that statutory wrongful death actions in Oregon historically had been subject to low limits of recovery and that the statute contained no limit on economic damages. *Id.* at 291.

In *Smothers*, the court addressed whether "the legislature ha[d] deprived plaintiff of a *means* for seeking redress for [his] injury * * *." *Smothers*, 332 Or at 120 n 19 (emphasis in original). Although *Smothers* did not illuminate the contours of what constitutes a

remedy under Article I, section 10, and, in fact, did not address the restorative aspect of the Remedy Clause at all, *Smothers* did observe that Article I, section 10, does not "freeze[] in place common-law remedies." *Id.* at 119. Instead, the legislature may alter common-law remedies, but "may not substitute an 'emasculated remedy' that is incapable of restoring the right that has been injured." *Id.* at 119-20 (quoting *West v. Jaloff*, 113 Or 184, 195, 232 P 642 (1925)). [15]

In sum, this court consistently has held that Article I, section 10, is not merely an aspirational statement, but was intended by the framers of the Oregon Constitution to preserve for future generations, against legislative or other encroachment, the right to obtain a remedy for injury to interests in person, property, and reputation under circumstances in which Oregon law provided a remedy for those injuries when Oregon ratified its constitution. *See, e.g., Smothers*, 332 Or at 124 ("At a minimum, to be remedy by due course of law, the statutory remedy must be available for the same wrongs or harms for which the common-law cause of action existed in 1857."). However, as our review of the cases demonstrates, Article I, section 10, does not eliminate the power of the legislature to vary and modify both the form and the measure of recovery for an injury, as long as it does not leave the injured party with an "emasculated" version of the remedy that was available at common law.

The Constitution's terms do not identify what would constitute an impermissible deprivation of a "remedy by due course of law for injury done * * *." Or Const, Art I, § 10. That phrase embodying (as it does) an affirmative guarantee of government action rather than a more familiar restraint on particular lawmaking or a procedural mandate, has produced some degree of inconsistency in our cases. It may be that some of the inconsistency stems from an erroneous consideration of Article I, section 10, as a "due process of law" clause. *See Perozzi*, 149 Or at 350 (so holding). [16] Other problems arise when, understandably, litigants advocate for modes of analysis and formulas without regard to the context in which this court has discussed them. For example, in *Hale*, the court determined that a limited remedy against public bodies for personal injury was permissible. However, the court in *Hale* had no occasion to consider the constitutionality of a liability scheme that altered the common-law right of a personal injury victim to bring an action against any individual tortfeasor for the full damage amount. *Hale*, 308 Or at 530 (Linde, J., concurring) ("this case presents no claim against public 'officers or employees or agents,'" ORS 30.265"). Similarly, *Greist* involved the special context of a statutory limitation on a remedy that the legislature itself had created for wrongful death and, like *Hale*, did not consider a limit on a common-law remedy against an individual tortfeasor. *See Greist*, 322 Or at 290-91 (describing context of dispute).

*Smothers* represents a more recent effort by this court to identify the substance of the remedy guarantee in the context of a personal injury incurred by a plaintiff while working for a private employer. This court, citing earlier cases, acknowledged the legislature's reservoir of lawmaking authority to adjust remedial processes and substantive remedies to satisfy the constitutional command to provide "remedy by due course of law for injury * * *." *Smothers*, 332 Or at 119. However, in focusing on that authority, this court stated that any alteration may not substitute an "emasculated" version of the remedy that was available at common law. *Id.* at 119-20.

Our assessment of the "injury done [plaintiff] in his person" is relatively simple in the context of this case. Plaintiff alleges, and defendants admit for purposes of this

proceeding, that, due to the personal injury suffered here as a consequence of defendants' negligence, plaintiff has suffered economic damages in the sum of $11,073,506, for anticipated life and health care expenses, and $1,200,000 for lost future earning capacity, for total economic damages of $12,273,506. Plaintiff also alleges, and defendants admit, that plaintiff has suffered noneconomic damages in the sum of $5,000,000. There is no dispute that, when Oregon adopted its remedy guarantee, plaintiff would have been entitled to seek and, if successful, to recover both types of damages from the individual defendants.

With the 1991 amendment to the OTCA, the legislature eliminated a plaintiff's right to seek a full recovery for torts committed by public officers, employees, or agents. That amendment left any injured person, in those circumstances, with a capped remedy of $100,000 in economic damages and $100,000 in noneconomic damages against the public body only. [17] The statute also eliminates entirely any claim against the individual tortfeasors by requiring substitution of those individual defendants by the public body as the sole defendant.

The individual defendants attempt to justify the complete statutory elimination of their liability by contending that the damage awards against a public body that ORS 30.270(1) allows constitute an adequate "remedy by due course of law." In so arguing, they rely on this court's opinion in *Hale*, however, as our discussion above indicates, *Hale* is distinguishable. *Hale* examined the adequacy of a statutorily capped monetary remedy in a claim against public bodies. *Hale*, 308 Or at 511-12, 521-24. In that case, with respect to the municipal defendant that did not enjoy sovereign immunity, the court's analysis did not address the injured plaintiff's traditional right to seek full relief from an individual tortfeasor. *Id.* at 521-24. The statutory scheme at issue here, in contrast, eliminates any claim against an individual tortfeasor. *Hale* does not assist the defendants in this case.

Neither does *Greist* support the individual defendants. As explained above, the statutory damage limitation at issue in *Greist* allowed recovery of 100 percent of any economic damages and up to $500,000 in noneconomic damages. *Greist*, 322 Or at 291. Placing no limit on recovery of economic damages allowed plaintiffs to recover fully their out-of-pocket losses, including expenses for medical, burial, and memorial services. *Id.* The court also explained that the wrongful death claim, at issue in that case, "came into existence with a limitation" and that, historically, recovery for wrongful death had been low. *Id.* Considered in that context, the court concluded that the legislative choice did not violate Article I, section 10. *Id.* In contrast, the legislation under review here does not merely adjust the recovery for a legislatively created remedial scheme; instead, it eliminates a common-law remedy against an individual tortfeasor.

We view plaintiff's economic damages of over $12 million as representative of the enormous cost of lifetime medical care currently associated with permanent and severe personal injuries caused by the medical negligence of a state officer, agent, or employee. Defendants do not argue that those damages do not constitute an "injury" within the meaning of the constitution. Nor does anything in the legislation suggest such a conclusion by the legislature. Yet, the legislature has completely eliminated an injured person's preexisting right to obtain a full recovery for those damages from the individual tortfeasors who negligently caused the injuries.

As we have explained, the legislature is authorized under Article I, section 10, to vary or

modify the nature, the form, or the amount of recovery for a common-law remedy.
However, that authority is not unlimited. To be clear, we respect the legislature's goal in
amending the OTCA in 1991 -- the legislature was entitled to conclude that the goal of
encouraging public employment of qualified health care professionals by protecting them
from the demands of litigation and the threat of personal liability is an important one. [18]
However, there is simply nothing that we can discern from our state's history, or from the
nature, the form, or the amount of recovery available for the preexisting common-law
claim, that would permit this court to conclude that the limited remedy for permanent and
severe injury caused by medical negligence that is now available under the OTCA meets
the Article I, section 10, remedy requirement.

In sum, we hold that (1) OHSU would have been entitled to sovereign immunity at
common law and, therefore, plaintiff would have had no common-law claim against
OHSU that is entitled to protection under Article I, section 10; (2) because OHSU is
entitled to sovereign immunity, the legislature can limit damages recoverable against
OHSU to any amount it chooses, unfettered by Article I, section 10's Remedy Clause;
however, (3) the elimination of a cause of action against public employees or agents in
ORS 30.265(1), as applied to plaintiff's claim against the individual defendants, violates
the Remedy Clause of Article I, section 10, because the substituted remedy against the
public body, as specified in ORS 30.270(1), is an emasculated version of the remedy that
was available at common law. [19]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is
reversed and the case is remanded to the circuit court for further proceedings.

BALMER, J., concurring.

Plaintiff was injured by the medical negligence of employees of Oregon Health and
Science University (OHSU). Plaintiff suffered damages (which OHSU, for present
purposes, does not dispute) of at least $11 million, primarily for the cost of his past and
future medical care. Oregon's current statutes limit plaintiff's recovery to $100,000 for
economic damages (medical costs, lost wages, and similar losses) and another $100,000
for noneconomic damages, such as pain and suffering. I agree with the majority's analysis
and with its conclusion that the statutes that lead to that result deprive plaintiff of a
remedy that he had at common law without providing an adequate substitute remedy, in
violation of the "Remedy Clause" of Article I, section 10, of the Oregon Constitution.

I write separately to make two points. First, the limit on the remedy available to plaintiff
here should have been increased long ago by the legislature -- and the legislature should
take this opportunity to reconsider the appropriate tort claims act limits for medical
malpractice claims against OHSU. Second, the majority correctly states that the Remedy
Clause does not prevent the legislature from modifying the form or amount of recovery --
or even from eliminating -- common-law claims, as long as it provides an adequate
substitute remedy. I would add that, under this court's cases, a legislatively imposed limit
on the damages that an injured patient may recover against OHSU and its employees
would not violate the Remedy Clause as long as that limit does not deprive the patient of
a "substantial" remedy. Those cases also demonstrate that the majority's decision does not
threaten existing statutes in which the legislature has altered or eliminated common-law
causes of action, such as the workers' compensation system.

I begin with a point that should be apparent to all the parties and *amici* in this case: The arbitrarily low cap on damages for medical malpractice claims against OHSU and its employees is a problem that has long called for a legislative solution. The present tort claims act imposes a cap of $100,000 for economic damages and another $100,000 for noneconomic damages for torts committed by public agencies and their employees without regard to the nature of the tort. ORS 30.270. Those limits may well be appropriate for most torts committed by public employees. Car accidents in which a public employee is at fault; the failure to clear ice from a public sidewalk leading to an injury -- the damages from those kinds of injuries may occasionally exceed the cap, but ordinarily they will not. It is for that reason that drivers and homeowners often carry insurance of $100,000 per person and $300,000 per accident. But, as this case so tragically illustrates, the nature of medical malpractice claims is such that damages in the form of future medical expenses and lost wages often can be hundreds of thousands or millions of dollars. For that reason, doctors don't have malpractice insurance of $100,000 or $300,000; rather, virtually every doctor in Oregon has medical malpractice insurance coverage of at least $1 million, with many doctors maintaining coverage of $3 million or $5 million per occurrence. [20]

The insurance obtained by individuals for claims arising from their driving and homeownership -- and by doctors for malpractice claims -- does not necessarily determine the limits of liability that the legislature should set for purposes of the Oregon Tort Claims Act, let alone the level that is required by the Remedy Clause. At the very least, however, the decisions of private individuals and institutions regarding their insurance coverage provide some indication of the kinds of claims those private actors ordinarily face and, indirectly, of what kind of remedy for those claims likely would be "substantial" or "adequate" for purposes of the Remedy Clause. In any event, the fact that virtually every Oregon doctor carries malpractice insurance that far exceeds the caps applicable to OHSU and its employees suggests that those limits need to be changed. In my view, the legislature should, at least for medical malpractice claims, increase the existing claims limit substantially and immediately and, perhaps, retroactively.

My second point relates to the standards by which this court reviews legislative modifications of common-law causes of action to determine whether they are consistent with the Remedy Clause. This court's Remedy Clause cases allow the legislature to adjust Oregon law to changing circumstances by creating, eliminating, or altering causes of action or providing defenses or immunities to the cause of action; however, if those changes eliminate a common-law remedy that existed in 1857, the legislature must provide an adequate substitute remedy. *See Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001). The majority recognizes that flexibility: "[T]the legislature is authorized, under Article I, section 10, to vary or modify the nature, the form or the amount of recovery for a common-law remedy," as long as an injured person has an adequate substitute remedy. ___ Or at ___ (slip op at 34); *see also* ___ Or at ___ (slip op at 30) (Remedy Clause "does not eliminate the power of the legislature to vary and modify both the form and the measure of recovery for an injury, as long as it does not leave the injured party with an 'emasculated' version of the remedy that was available at common-law.").

The difficulty, of course, in this as in other Remedy Clause cases, is determining whether a substituted remedy is constitutionally adequate. This court has not articulated a precise test, and it probably is not possible to do so. As the majority notes, we have used

different words to try to identify what kind of remedy is required. Many cases simply have held that the legislature may not leave a plaintiff "without remedy," *Mattson v. Astoria*, 39 Or 577, 579, 65 P 1066 (1901), or with only an "emasculated" remedy. *West v. Jaloff*, 113 Or 184, 195, 232 P 642 (1925). In *Hale v. Port of Portland*, 308 Or 508, 523, 783 P2d 506 (1989), the court reviewed the earlier Remedy Clause decisions and stated that the Remedy Clause "is not violated when the legislature alters (or even abolishes) a cause of action, so long as the injured party is not left entirely without a remedy. Under those cases, *the remedy need not be precisely of the same type or extent*; it is enough that the remedy is a substantial one." (Emphasis added.) In *Hale*, this court upheld a cap on damages that the legislature had enacted as part of an expansion of the class of plaintiffs who could sue a public body: "A benefit has been conferred, but a counterbalancing burden has been imposed. This may work to the disadvantage of some, while it will work to the advantage of others." *Id.*

Plaintiff argues that any statute that imposes a limit on the damages that a plaintiff could have recovered at common law violates the Remedy Clause. From plaintiff's perspective -- which I respect, but disagree with -- the Remedy Clause prevents the legislature from eliminating plaintiff's cause of action against the individual defendants in this case and substituting OHSU as the sole defendant, as long as there is any limit on OHSU's liability. Plaintiff asserts that even if the legislature set a limit of $1 million or $10 million on OHSU's liability, that limit would be unconstitutional as applied to any plaintiff whose damages exceeded whatever the limit happened to be. [21] Plaintiff takes that position because, at common law, plaintiff had a cause of action against the individual defendants for all his damages, without any limit whatsoever.

No Oregon case supports plaintiff's position that any tort claims limit would be unconstitutional when applied to a plaintiff whose damages exceeded that limit. *Hale* is almost directly on point. There, this court *upheld* a tort claims damage limits of $100,000 on a claim against the City of Portland, even though (1) the plaintiff's alleged economic damages exceeded $600,000, and (2) at common law, the plaintiff would have had a claim against the city for an unlimited amount (because the claim was against the city acting in a proprietary capacity). This court rejected the plaintiff's argument that the $100,000 limit on damages that could be recovered against the city violated the remedy clause because the plaintiff's damages exceeded that amount. As this court concluded in upholding the cap, although "a limit has been placed on the size of the award that may be recovered," all persons "who had a remedy continue to have one." *Hale*, 308 Or at 523. More relevant to this case, the court in *Hale* recognized that when the legislature modifies a common-law claim, that change may "work to the disadvantage of some, while it will work to the advantage of others." *Id.*

Plaintiff asserts that *Hale* is distinguishable because that case, unlike this one, did not involve a claim against individual defendants that the legislature had eliminated. Although Justice Linde relied upon that fact in his concurring opinion, 308 Or at 527 (Linde, J., concurring), it played no role in the majority's analysis. Rather, the majority in *Hale* viewed the statutory scheme there as adjusting the liability of public defendants by making the city liable for torts committed in its governmental capacity that it would not have been liable for at common law. Similarly, in this case, the statutory scheme adjusted the liability of public defendants by eliminating the common-law claim against the individual defendants and making OHSU liable for their torts -- liability from which it would have been immune at common law. [22] In both cases, those adjustments were

accompanied by the imposition of a limit on the amount of damages that, without the statutory limit, could have been recovered at common law.

*Greist v. Phillips*, 322 Or 281, 906 P2d 789 (1995), also rejected the argument that plaintiff makes here. In that wrongful death case, a jury had awarded the plaintiff noneconomic damages of $1.5 million, but the trial court had reduced the award to $500,000 pursuant to *former* ORS 18.560(1) *renumbered as* ORS 31.710 (2003). The plaintiff in *Greist* made the same argument that plaintiff makes here: that the cap "wholly denies a remedy for legitimate losses *that exceed $500,000*." *Greist*, 322 Or at 290 (quoting the plaintiff's brief). This court, however, concluded that plaintiff's recovery of $500,000 in noneconomic damages, in addition to $100,000 in economic damages, was a "substantial remedy," even though it was a fraction of the amount that the jury had awarded.

The majority distinguishes *Hale* and *Greist* from this case on grounds that I find persuasive. However, nothing in the majority opinion undermines the holdings in those cases that the Remedy Clause does not prohibit the legislature from imposing caps on tort damages as long as those caps do not deprive a plaintiff of a "substantial remedy." *Hale* and *Greist* both hold that the legislature may act with regard to *classes* of claims or plaintiffs and that a statutory limit on certain kinds of claims does not violate the remedy clause, even though it may limit the damages that can be recovered by a particular plaintiff for a particular claim. In my view, the problem with the statutory scheme at issue in this case is not the fact that OHSU's liability is capped, but rather that a cap of $100,000 for economic damages and $100,000 for noneconomic damages is not a substantial remedy for medical malpractice claims.

To summarize, Article I, section 10, does not "freeze in place common-law causes of action that existed when the drafters wrote the Oregon Constitution in 1857." *Smothers*, 332 Or at 124. Rather, the legislature may modify those remedies by changing the nature of the plaintiff's claim, the available defenses, or the amount of damages that the plaintiff may recover, as long as the plaintiff retains a substantial remedy "for injury done him in his person, property, or reputation." Here, the modification made by the legislature -- the elimination of the claims against the individual defendants and the substitution of OHSU as the only defendant, with the caps on OHSU's liability described above -- did not leave plaintiff with a substantial remedy for his malpractice claim.

That understanding of the issue in this case also demonstrates that nothing in the majority's opinion undermines other statutes in which the legislature has adjusted common law rights and liabilities. The most obvious example is the workers' compensation system. In *Smothers*, this court stated that the court's earlier decisions "implicitly * * * recognized the legislature's constitutional authority to substitute workers' compensation for the common-law negligence cause of action for work-related injuries." 332 Or at 125. The workers' compensation scheme provides an injured worker with compensation for work-related injuries without the necessity of proving the employer's negligence; however, the amounts that a particular injured worker may receive may well be less than he or she could recover in a successful negligence action against the employer. In a sense, an injured worker's damages are capped at the level of benefits that the worker receives under the workers' compensation program. However, because of the trade off of not having to prove the employer's negligence (and other procedural advantages) and because injured workers' benefits are related to the severity of the injury, the workers' compensation scheme provides workers generally with a "substantial

remedy" for remedy clause purposes.

In other statutes, the legislature has determined that important public policies will be advanced by encouraging certain activities and has modified common-law causes of action involving those who participate in such activities. "Good Samaritan" statutes limit the circumstances in which a person injured by another person who provides emergency medical assistance, transportation, or defibrillator treatment can recover damages. *See* ORS 30.800; ORS 30.807; ORS 30.802. Other statutes provide individuals with limited immunity for reporting child abuse, ORS 419B.025, and for disclosing information about a former employee to a new employer. ORS 30.178. In those and similar statutes, the legislature has modified the plaintiff's common-law cause of action by, for example, requiring the plaintiff to prove "gross negligence" rather than "negligence," or by providing limited immunity to defendants for some kinds of conduct. The majority's decision, like this court's earlier Remedy Clause cases, allows the legislature to respond to what it perceives to be important public policy needs, as long as it does not eliminate a common-law cause of action without providing an adequate substitute remedy.

Kistler, J., joins in this concurring opinion.

------------

1. ORCP 21 B states: "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."

**Return to** previous location.

------------

2. The "individual defendants" are Mustafa Cobanuglu, MD; John Blizzard, MD; Sanjeev Sharma, MD; Steven Fiamengo, MD; Betsy Soifer, MD; Jennifer Stewart, RRT; and Ana Wilson, RN. "Defendants," in this opinion, includes the individual defendants. "OHSU" refers only to Oregon Health and Science University.

**Return to** previous location.

------------

3. Article I, section 17, of the Oregon Constitution, provides: "In all civil case, the right of Trial by Jury shall remain inviolate."

**Return to** previous location.

------------

4. Because the court agreed with plaintiff's Article I, section 10, argument, the court declined to reach plaintiff's Article I, section 17, argument regarding the claims against the individual defendants. *Clarke*, 206 Or App at 634.

**Return to** previous location.

5. This court permitted the state to intervene on rev. ..

**Return to** previous location.

————

6. Other public bodies, such as municipal corporations, enjoyed immunity from suit only when engaged in "governmental" functions, but not when engaged in "proprietary" functions. *Hale*, 308 Or at 518. The distinction between governmental and proprietary functions, however, is not entirely clear from our previous cases. *See id.* at 518-19) (noting this court's inconsistent conclusions concerning whether street maintenance, for example, was governmental or proprietary). Because we conclude that OHSU is an instrumentality of the state, we do not address whether OHSU was engaged in a governmental or proprietary function when it treated plaintiff.

**Return to** previous location.

————

7. We note that this court recently concluded that SAIF was not an arm of the state for purposes of Eleventh Amendment immunity. *Johnson v. SAIF*, 343 Or 139, 156, 164 P3d 278 (2007). As we noted in that case, however, the test for Eleventh Amendment immunity is different than the analysis required to determine whether an entity is an "instrumentality" of the state for state immunity purposes. *Id.* at 147-48, 151 (outlining factors of Eleventh Amendment analysis).

**Return to** previous location.

————

8. We note also that the OTCA is specifically made applicable to OHSU, under ORS 353.100(1).

**Return to** previous location.

————

9. We briefly address plaintiff's argument that the damages limitation of the OTCA violates his right to a jury trial under Article I, section 17. Article I, section 17, is not the source of any substantive claim or theory of recovery. *Jensen*, 332 Or at 422. Instead, as this court summarized in *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463 (1999), Article I, section 17, "guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 * * *." *See also Jensen*, 334 Or at 422 (quoting same). Here, we have concluded that plaintiff would not have had a civil action against OHSU under the common law. Therefore, the OTCA's damages cap as against OHSU does not violate plaintiff's right to a jury trial under Article I, section 17.

Return to previous location.

———

10. Defendants' contention that the "remedy" guaranteed by Article I, section 10, refers only to the process of administering justice, and not to the substance of the remedy afforded, is contradicted by our decision in *Smothers*, 332 Or at 124, as we noted earlier: "The word 'remedy' refers both to a remedial process for seeking redress for injury and to what is required to restore a right that has been injured."

Return to previous location.

———

11. ORS 30.265(3)(a) provided, in part:

    "Every public body and its officers, employees and agents acting within the scope of their employment or duties, * * * are immune from liability for:

    "(a) Any claim for injury to or death of any person covered by any workers' compensation law."

Return to previous location.

———

12. In *Storm v. McClung*, 334 Or 210, 222-23, 47 P3d 476 (2002), this court disavowed *Neher*, to the extent that it concluded that ORS 30.265 (3)(a) violated Article I, section 10, because, contrary to the holding in *Neher*, Article I, section 10, affords protection only to injuries for which a cause of action existed in 1857.

Return to previous location.

———

13. ORS 18.560 placed a limitation on noneconomic damage awards of $500,000 in all civil actions except for those brought pursuant to the Oregon Tort Claims Act and the Oregon Workers' Compensation Act. *Greist*, 322 Or at 284 n 1. That statute was later held unconstitutional under Article I, section 17, in *Lakin*, 329 Or at 82.

Return to previous location.

———

14. *Greist* assumed that the Remedy Clause applied to a statutory wrongful death action. We note that, in accordance with our decision in *Storm*, 334 Or at 222-23, limits on legislatively created causes of action are not subject to Article I, section 10.

Return to previous location.

————

15. *Smothers*'s use of the phrase "emasculated remedy" has its origins
in this court's decision in *West*. *Smothers*, 332 Or at 119-20. In *West*,
113 Or at 195, this court held that ambulance drivers would remain
liable for negligently inflicted injuries, despite a statute that could
have been construed to limit such liability, because such a
construction took away "from an injured person a good common-law remedy
for a private injury committed by a private citizen and gives him an
*emasculated remedy wholly inadequate under many conditions*." (Emphasis
added.) The court also explained that such a remedy "could not be taken
away without providing some other *efficient remedy* in its place." *Id.*
(emphasis added). *West*, however, did not involve -- and therefore did
not provide -- an analysis of a statutory limitation on recoverable
damages.

Return to previous location.

————

16. We need not revisit the "due process of law" question to decide
this case. This court disavowed that reasoning in *Smothers*, 332 Or at
121-22.

Return to previous location.

————

17. ORS 30.270(1)(b) states that damages recoverable against a public
body shall not exceed:

> "$100,000 to any claimant as general and special damages for
> all other claims arising out of a single accident or
> occurrence unless those damages exceed $100,000, in which
> case the claimant may recover additional special damages, but
> in no event shall the total award of special damages exceed
> $100,000."

General damages, as noted above, now are described as noneconomic
damages and encompass nonmonetary losses, including damages for pain
and suffering, emotional distress, injury to reputation, and loss of
companionship. *See, e.g.*, ORS 31.710(2)(b) (defining noneconomic
damages in the context of a statute limiting recovery for noneconomic
damages in civil cases). Special damages now are described as economic
damages and refer to the verifiable out-of-pocket losses, including
medical expenses, loss of income and future impairment of earning
capacity, and costs to repair damaged property. *See, e.g.*, ORS 31.710
(2)(a) (defining economic damages).

Return to previous location.

————

18. We note, however, that OHSU health care professionals who provide patient care outside of the OHSU system, pursuant to a private relationship between the patient and the professional, are not protected by the OTCA. *See* ORS 30.268(2) (noting that "services constituting patient care that are provided at a location other than the [OHSU campus or clinics] are not within the scope of state employment or duties" when those services are provided pursuant to "an exclusively private relationship").

**Return to** previous location.

---

19. Because we have concluded that the OTCA, in this case, violates Article I, section 10, we need not address plaintiff's argument that the damages limitation of the OTCA violates his right to a jury trial under Article I, section 17.

**Return to** previous location.

---

20. According to one comprehensive survey, for 2003, 34.9 percent of Oregon doctors had malpractice insurance with a per occurrence limit of $1 million (a decline from 45 percent in 1996), while 26.8 percent had a per occurrence limit of $5 million (up from 22.2 percent in 1996). Oregon Professional Panel for Analysis of Medical Professional Liability Insurance, A Report on Factors Impacting Medical Malpractice Insurance Availability and Affordability p 65 (2004).

**Return to** previous location.

---

21. Plaintiff's challenge to the existing tort claims limit -- or to any such limit -- necessarily would be an "as applied" challenge available only to plaintiff (or a similarly situated plaintiff) whose damages actually exceeded the limit. In *Jensen v. Whitlow*, 334 Or 412, 51 P3d 599 (2002), this court rejected a facial challenge to the tort claims act limit. Plaintiff does not ask us to overrule *Jensen*, and the majority does not do so.

**Return to** previous location.

---

22. Indeed, the majority reaffirms OHSU's status as part of the state and therefore partaking of the state's sovereign immunity, except to the extent waived by statute.

**Return to** previous location.

---

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK SCHLISKE,

          Plaintiff,

   v.

ALBANY POLICE DEPARTMENT; JASON
CARLILE,

        Defendants.

Case No. 6:08-cv-6098-AA

**CERTIFICATE OF SERVICE**

Plaintiff Frank Schliske certifies that he served PLAINTIFF'S SECOND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND OPPOSING DEFENDANT CARLILES MOTION' FOR SUMMARY JUDGMENT to attorneys for Albany Police Department and Jason Carlile by mailing true copies of such enclosed in sealed envelopes first class postage fully pre--paid to the following:

Gerald L Warren, Atty.
280 Liberty St, SE St 206
Salem OR 97301

Joseph G Groshong, Atty
1162 Court Street
Salem OR 97301-4096

Executed This December 4, 2008

Frank Schliske
541-924-0195