IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK SCHLISKE,                                      Civ. No. 08-6098-AA

        Plaintiff,                               OPINION AND ORDER

  v.

ALBANY POLICE DEPARTMENT,
JASON CARLILE,

        Defendants.

---

Aiken, Chief Judge:

    Plaintiff, appearing *pro se*, filed suit against defendants alleging unlawful seizure under 42 U.S.C. § 1983 and state law claims of false arrest and defamation/false light. Plaintiff and both defendants move for summary judgment on all claims. Upon review of the motions and supporting documentation, defendant Carlile's motion is granted, defendant Albany Police Department's motion is granted in part and denied in part, and plaintiff's motions are denied. Further, plaintiff is granted leave to amend his complaint with respect to his claim for unlawful seizure under § 1983.

1    - OPINION AND ORDER

BACKGROUND

On November 30, 2007, the Albany Policy Department received a call from Kathy Leonard. Ms. Leonard reported that her brother, Scott Leonard, contacted her that morning and told her that plaintiff had confessed to killing "a known pedophile" the night before. Kathy Leonard also reported that her brother feared that plaintiff would harm or kill him. Albany Police Officer Damon Struble convinced Kathy Leonard that her brother should contact the police department.

Scott Leonard subsequently went to the police station for an interview. Leonard reported that during the early morning hours of November 30, 2007, plaintiff was driven home in a pick-up truck and contacted Leonard, his neighbor. Leonard reported that plaintiff looked distraught and upset and said he had killed someone that night by breaking the person's neck. Plaintiff reportedly told Leonard that the alleged victim was a pedophile who angered plaintiff by calling him a liar. Leonard reported that plaintiff was "really convincing" and very emotional. Leonard stated that plaintiff told him several people had to "pull him off" the alleged victim, and that plaintiff's friends would take care of the body. Leonard reported that he feared for his safety, because plaintiff said he would have to kill Leonard, too.

Based on Scott Leonard's statements, Officer Struble and others opened an investigation and obtained information from

2   - OPINION AND ORDER

plaintiff's mobile phone provider and a search warrant for plaintiff's residence and person. Plaintiff's whereabouts were unknown at the time.

Police officers spoke to several people, including plaintiff's landlord, employer, and a few friends. Officers learned that on the evening of November 29, 2007, plaintiff had been drinking with Dana Sprague, Brett Hinck, Christina Davis, and David Sitton at Sprague's apartment. Plaintiff took a cab to Sprague's residence, and the taxi driver reported that plaintiff mentioned to her that someone had "ratted" him out and he was going to "pay that person back."

Sprague was interviewed and reported that plaintiff had been drinking when he arrived at her home on November 29, 2007, and that plaintiff became more intoxicated as the evening progressed. Sprague stated that plaintiff becomes loud when he drinks, and that he became agitated and argued with Sitton about mutual acquaintances and past events. At one point, plaintiff left her apartment and Sprague heard what she thought was plaintiff banging on a neighbor's door and a crash, as if plaintiff or someone else had fallen down the stairs. Plaintiff returned a short time later, and Sprague asked him to leave because of his behavior.

Sprague told officers that Brett Hinck then transported plaintiff home in Hinck's pickup truck. A short time later, at Sprague's behest, Christina Davis called Hinck to check on his

welfare given plaintiff's intoxicated and agitated state. Sprague reported that Hinck returned to her residence shortly afterward and said that nothing had happened.

Brett Hinck was also interviewed by police. He reported that he, plaintiff, Dana Sprague, David Sitton, and Christina Davis were drinking at Sprague's residence the evening of November 29, 2007. Hinck stated that plaintiff did not seem angry or upset, "just drunk," and that plaintiff was an "in-your-face type of drunk." Hinck reported that plaintiff might appear violent because he talks a lot about fighting and drugs. Like Sprague, Hinck reported that plaintiff and Sitton were taking about past events and mutual acquaintances.

Hinck stated that after plaintiff finished a bottle of whiskey, he stood up and said he wanted to fight someone. Hinck and Sitton declined to fight, and plaintiff said he needed some air and walked outside. Hinck stated that he heard plaintiff either stumble or fall down the stairs. Hinck then heard plaintiff mumble and begin pounding on a downstairs neighbor's door for several minutes. Hinck reported that when plaintiff returned to the residence, Sprague asked plaintiff to leave because he "was causing problems." Hinck agreed to give plaintiff a ride home. When they arrived at plaintiff's residence, plaintiff began what Hinck called "the drunken sobbing" and said he had no family other than his "uncle" who lived next to him - Scott Leonard. Hinck stated that

it took approximately fifteen minutes to convince plaintiff to get out of his truck.  As Hinck was leaving plaintiff's residence, Christina Davis called Hinck and asked if everything was okay.  Hinck told Davis that he was fine and on his way back to Sprague's apartment.  Hinck reported that Dana Sprague, David Sitton and Christina Davis were still at Sprague's apartment when he returned and remained there until morning.

Officers also interviewed Patricia Pitts, plaintiff's employer.  Pitts reported that she directed plaintiff to return home on the morning of November 30, 2007, because he was still drunk and unable to work.  In a subsequent interview, Pitts admitted that she had contacted plaintiff about the police investigation, because she believed plaintiff had "just gotten drunk" and told Leonard a "wild story."

On December 2, 2007, police made contact with plaintiff at a friend's house, detained and handcuffed him, and transported him to the police station for an interview.  The Albany Police Department asserts that plaintiff was detained for purposes of executing the search warrant for his person, and that he voluntarily accompanied officers.  Plaintiff contends he had little choice but to consent given the manner in which he was detained.  A search of plaintiff revealed no evidence, marks or injuries consistent with a recent struggle or assault.

During his interview, plaintiff reported that he took a taxi

5    - OPINION AND ORDER

to Sprague's apartment on November 29, 2007. Plaintiff stated that Ms. Sprague, a couple and another man (presumably Davis, Sitton, and Hinck) were present at Sprague's apartment, and that he talked about his past boxing matches and street fighting. Plaintiff admitted that he drank large quantities of beer and whiskey that evening. Plaintiff reported that after he "got drunk and mouthy" Sprague asked him to leave, and Hinck gave him a ride home. Plaintiff reported that he remembered little after Hinck took him home, except that he went to Leonard's because he needed a "shoulder to cry on."

After further questioning about an alleged assault, plaintiff stated that he was very drunk on November 29, 2007 and could not remember hurting anybody, but if he did, it was an "accident." Plaintiff also underwent a polygraph examination and was told that the results revealed he was concealing knowledge about the death of another person. The results of the polygraph examination were never shown to plaintiff, and the Albany Police Department has not submitted the results from plaintiff's polygraph examination or a supporting affidavit from the administering Oregon State Police Detective.

Plaintiff was then arrested, jailed, and charged with manslaughter for the death of David Sitton. Police officers presumed Sitton to be plaintiff's victim, because he was present at Sprague's house the evening of November 29, 2007, he and plaintiff

reportedly argued, and Sitton - who was homeless at the time - "appeared" to be missing. Concise Statement of Material Facts, ¶10.

On December 4, 2007, David Sitton apparently called the Albany Police Department and stated that he was not dead. Plaintiff was not released from custody, however. Instead, an Amended Information was filed by the Linn County District Attorney's Office charging plaintiff with manslaughter for causing the death of "another unnamed human being."

On December 5, 2007, Sitton went to the Albany Police Department to establish that he was not the victim of a homicide.

On December 10, 2007, the charges against plaintiff were dismissed. In an Albany Democrat Herald article dated December 11, 2007, defendant Carlile was quoted as stating, "This is still a homicide investigation," and that the case was not closed. Carlile also stated that while a charge of manslaughter does not require identification of the victim, it was nonetheless "important to know who is dead."

After the charge against plaintiff was dismissed, Albany police officers continued their investigation and obtained information regarding plaintiff's propensity to fabricate stories about killing others. See Declaration of Glenn Fairall, Ex. 1.

Plaintiff alleges that as a result of his unlawful arrest and confinement, he lost his job and was evicted from his residence.

7    - OPINION AND ORDER

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

8    - OPINION AND ORDER

DISCUSSION

As pled and construed, plaintiff alleges a claim of unlawful seizure under 42 U.S.C. § 1983 and a state law claim of false arrest against defendant Albany Police Department (Albany PD). Plaintiff also alleges a claim of defamation/false light against defendant Carlile. See Complaint (doc. 2).

A.  Unlawful Seizure - 42 U.S.C. § 1983

Albany PD moves for summary judgment on plaintiff's § 1983 claim, arguing that it is not a person within the meaning of § 1983 and that plaintiff fails to allege an unconstitutional policy or custom that renders Albany PD liable. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Gibson v. County of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002). Given plaintiff's *pro se* status, I liberally construe his claim to be asserted against the City of Albany as a municipality.

A municipality is a "person" under § 1983 and may be held liable for constitutional violations. However, "[a] municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents . . . . Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Here, plaintiff alleges no City of Albany policy, practice or custom that violated his rights against unlawful seizure, such as

9    - OPINION AND ORDER

a policy that authorizes detention or arrest in circumstances similar to plaintiff's. Instead, plaintiff alleges unlawful seizure and false arrest on the part of several Albany PD officers. However, plaintiff cannot hold the City of Albany liable for alleged constitutional deprivations caused by its employees; plaintiff must assert § 1983 claims against the individual City of Albany police officers who allegedly violated his constitutional rights. Accordingly, neither the City of Albany nor Albany PD is a proper defendant with respect to plaintiff's claim for unlawful seizure, and Albany PD's motion for summary judgment is granted.

However, I grant plaintiff leave to amend his complaint, because the parties' motions and supporting documentation establish cognizable § 1983 claims against the individual police officers involved in plaintiff's arrest. See Donald v. Cook County Sheriff's Dep't, 95 F.3d 548, 555 (7th Cir. 1996) ("Numerous cases in this and other circuits have established that, when the substance of a *pro se* civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint, the district court must provide the plaintiff with an opportunity to amend the complaint."); see also Stull v. Giusto, 2007 WL 2778407, *6 (D. Or. Sept. 20, 2007).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without

10   - OPINION AND ORDER

probable cause or other justification." Dubner v. City and County of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001); Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992) ("Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983."). Probable cause exists if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." United States v. Carranza, 289 F.3d 634, 640 (9th Cir. 2002) (quotations and citation omitted).

Here, plaintiff was handcuffed, taken to the police station for questioning, and ultimately charged with manslaughter based on nothing more than plaintiff's drunken hearsay statements and questionable inferences of suspicious behavior. As detailed in several lengthy police reports, Albany PD's investigation uncovered the following facts: plaintiff became extremely drunk and arguably belligerent at Sprague's apartment on November 29, 2007, went outside and possibly fell down the stairs, banged on a neighbor's door, was asked to leave Sprague's apartment, received a ride home from Hinck, and spoke with Leonard. See Supplemental Reports, docs. 51 and 52. The next morning, plaintiff was either hungover or still intoxicated and did not work. Plaintiff then spent the next night or two at a friend's house rather than his own.

11   - OPINION AND ORDER

No physical evidence or witness statements recounted in the numerous police reports corroborate the tale heard by Scott Leonard; the police investigation revealed no witnesses to an assault, no physical evidence of an assault, and no victim of an assault. Notably, officers presumed Sitton to be the victim - apparently because Sitton argued with plaintiff at Sprague's apartment and could not be located for two days - despite the fact that two witnesses reported Sitton to be very much alive <u>after</u> plaintiff left Sprague's apartment and was taken home by Hinck.

Absent a shred of corroborating physical evidence or supporting witness statements, it remains a genuine issue of material fact whether a prudent or reasonable person would have concluded there was a "fair probability" that plaintiff had killed someone. <u>United States v. Del Vizo</u>, 918 F.2d 821, 825 (9th Cir. 1990) (information relied on by police officers making probable cause determinations must be "reasonably trustworthy").

Albany PD nonetheless argues that plaintiff "has no one to blame but himself" for his arrest, because his own uncertainty about his actions on November 29, 2007 and misleading polygraph answers established probable cause for his arrest. Memorandum in Support of Motion for Summary Judgment, p. 6. However, it is questionable whether plaintiff's admitted doubtfulness about his conduct on November 29, 2007 supports a finding of probable cause when plaintiff was extremely inebriated that evening and police

possessed no tangible evidence that a crime had actually occurred. Regardless, the legality of an arrest is based on information the police possessed at the time of the arrest; facts acquired after the arrest are irrelevant to the determination of probable cause. <u>United States v. Delgadillo-Velasquez</u>, 856 F.2d 1292, 1298 (9th Cir. 1988). Here, plaintiff was handcuffed and detained prior to his interview and polygraph examination and arguably was not free to leave, thus creating a genuine issue of fact as to the timing of and basis for his arrest.

Moreover, Albany PD submits no admissible evidence that, in fact, plaintiff gave misleading answers during his polygraph examination. Instead, Albany PD relies on the declaration of Detective Glenn Fairall, who avers that Oregon State Police Detective C.W. Bryant told Fairall and another detective that plaintiff was concealing knowledge. Even if Albany PD submitted undisputed evidence that plaintiff "failed" the polygraph, it cites no caselaw holding that such failure constitutes probable cause for an arrest absent corroborating evidence that a crime has been committed.

Thus, because questions of fact regarding the existence of probable cause must be resolved by a jury rather than by the court on summary judgment, amendment of plaintiff's complaint would not be futile. In sum, plaintiff presents a cognizable claim of unlawful seizure under 42 U.S.C. § 1983. Accordingly, he is

13   - OPINION AND ORDER

granted leave to amend his complaint to name as defendants the individual police officers who allegedly violated his constitutional rights.

## B. False Arrest

Albany PD also moves for summary judgment against plaintiff's state law claim for false arrest. The tort of false arrest has four elements: 1) the defendant confined the plaintiff; 2) the defendant intended the acts that caused the confinement; 3) the plaintiff was aware of the confinement; and 4) the confinement was unlawful. Hiber v. Creditors Collection Serv. of Lincoln County, Inc., 154 Or. App. 408, 413, 961 P.2d 898, rev. denied, 327 Or. 621, 971 P.2d 413 (1998) (citing Lukas v. J.C. Penney Co., 233 Or. 345, 353, 378 P.2d 717 (1963)). The plaintiff must establish the confinement, but the defendant bears of burden of establishing that the confinement was lawful. Ross v. City of Eugene, 151 Or. App. 656, 663, 950 P.2d 372 (1997). "Generally, the elements of false arrest are factual issues that are to be resolved by the trier of fact." Id.

As stated above, it remains a genuine issue of fact as to whether plaintiff's arrest was supported by probable cause and whether his confinement was lawful. Therefore, summary judgment is inappropriate and the parties' motions on this claim are denied.

## C. Defamation/False Light

Defendant Carlile moves for summary judgment on plaintiff's

14 - OPINION AND ORDER

claim of defamation/false light. Plaintiff argues that Carlile's statements to the Albany Democratic Herald suggest or imply that plaintiff committed a homicide despite the fact that no evidence of a homicide existed, thus subjecting plaintiff to contempt and placing him in a false light.

A defamatory statement is one that subjects another to hatred, contempt, or ridicule; tends to diminish the esteem, respect, goodwill, or confidence in which the other is held; or to excite adverse, derogatory or unpleasant feelings or opinions against the other. Reesman v. Highfill, 327 Or. 597, 603, 965 P.2d 1030 (1998). "To be actionable, a communication must be both false and defamatory." Id. Whether a communication is capable of defamatory meaning is a question of law for the court. Id. at 604; see also Morrow v. II Morrow, Inc., 139 Or. App. 212, 219, 911 P.2d 964 (1996) (describing elements of false light).

Here, plaintiff fails to establish the falsity of Carlile's statements that the investigation was continuing and that the case was not closed. In fact, officers continued their investigation by interviewing other acquaintances of plaintiff. See Fairall Decl. Plaintiff's contention that Carlile knew or should have known that no probable cause existed for his arrest and continued detention does not establish the falsity of Carlile's statements.

Further, Carlile's statements are privileged, because they were made in the course of performing his official duties. See

15    - OPINION AND ORDER

Chamberlain v. City of Portland, 184 Or. App. 487, 493-94, 56 P.3d 497 (2002). Therefore, summary judgment is granted on this claim.

CONCLUSION

Defendant Carlile's Motion for Summary Judgment regarding plaintiff's defamation claim (doc. 28) is GRANTED, and plaintiff's Motions for Partial Summary Judgment against defendant Carlile (docs. 25, 27) are DENIED. Defendant Albany Police Department's Motion for Summary Judgment (doc. 38) is GRANTED with respect to plaintiff's claim of unlawful seizure under § 1983 and denied with respect to his state law claim of false arrest. Plaintiff's Motions for Partial and Full Summary Judgment against the Albany Police Department (docs. 37, 51) are DENIED.

Plaintiff is GRANTED LEAVE to amend his complaint to name individual defendants with respect to his claim of unlawful seizure, as plaintiff asserts a cognizable claim under § 1983. Plaintiff shall file his amended complaint within thirty (30) days from the date of this order.

IT IS SO ORDERED.

Dated this   12   day of May, 2009.

　　　　　　　　　/s/ Ann Aiken
　　　　　　　　　Ann Aiken
　　　　United States Chief District Judge